Donald R. THOMAS, Plaintiff–Appellee,

v.

Daniel Dee HOLLIDAY, a minor child under the age of 18 years of age, By and Through his mother and next friend, Nagako HOLLIDAY, and Nagako Holliday, an individual, Defendants–Appellants.

No. 63821.

Supreme Court of Oklahoma.

Oct. 25, 1988.

Jack S. Dawson, David A. Kaserman, Miller, Dollarhide, Dawson & Shaw, Oklahoma City, for defendants-appellants.

Arthur R. South, Lawton, for plaintiff-appellee.

OPALA, Justice.

The issue tendered for our decision is whether the trial court erred in granting the plaintiff's motion for new trial on the ground that its assumption-of-risk charge to the jury had been incorrectly given. We answer this question in the negative and hold that the evidence adduced at trial did not warrant an instruction on assumption of risk.

The plaintiff, Donald R. Thomas [Thomas], a security guard for Safeway and an off-duty Lawton police officer, observed the defendant, Daniel D. Holliday [Holliday], partially eat a pastry in the grocery store and then replace it on a shelf. Holliday then left the store. Thomas, along with another employee, went to the parking lot where they saw Holliday sitting inside a car. Thomas noted the license tag number and approached the vehicle. While showing his badge he asked Holliday to roll down the window and answer some questions. Holliday denied any wrongdoing and began to drive away. Thomas then opened the car door and attempted either to get inside or turn off the ignition. Unable to do either, he grabbed the back of the bucket seat while his left hand was on the door. Thomas then jumped on the side of the car and fell from it while it was turning. He sustained an injury to his shoulder.

Thomas brought this action against Holliday to recover for his injury, medical bills, lost time from work and other damages. Holliday raised the assumption-of-risk defense and requested a jury charge explaining this theory and its legal effect *as a complete shield from liability.*[1] Thomas

---

1. Jury instruction No. 13 states:
 "A person assumes the risk of injury resulting from the negligence of another if he voluntarily and unreasonably exposes himself to injury with knowledge and appreciation of the danger and risk involved. *If you find that the plaintiff assumed the risk of injury, then your verdict must be in favor of the defendant."* [Emphasis added.]

 A complete or absolute defense is one that, if found applicable by the trier, will shield the defendant from *any* liability for the claim and thus operate as a bar to *any* recovery by the plaintiff. See *Duffy v. Midlothian Country Club, infra* note 8, 90 Ill.Dec. at 240–241, 481 N.E.2d at 1040–1041; *Springrose v. Willmore, infra* note 8, 192 N.W.2d at 827 and *Blackburn v. Dorta, infra* note 8 at 288–289.

objected to the instruction, contending that under Oklahoma's comparative negligence statute [2] assumption of risk should be apportioned similarly to contributory negligence.

The trial court gave the requested instruction and the jury returned a verdict for Holliday. Thomas subsequently sought a new trial on the grounds that the court had erred in giving the assumption-of-risk instruction and that the jury verdict reflects the triers' reliance on this impermissible charge to his detriment. The court granted Thomas a new trial and this appeal followed.

## I.

## THE DOCTRINE OF ASSUMPTION OF RISK

The defense of assumption of risk is relatively new to the common law,[3] and the typical case of risk assumption draws either from a status relation or a contract between the parties.[4] The root of the defense, which evolved in the master/servant or employer/employee context, was used by employers to protect the emerging industries of the 19th century from claims of employment-related injuries.[5] The decisions held that the employee was free to contract for service to be rendered and, because of his status he assumed all risks of harm other than hazards stemming from the employer's failure to provide a safe place to work.[6]

2. The terms of 23 O.S.1981 § 13 provide:
"In all actions hereafter brought, whether arising before or after the effective date of this act [July 1, 1979], for negligence resulting in personal injuries or wrongful death, or injury to property, contributory negligence shall not bar a recovery, unless any negligence of the person so injured, damaged or killed, is of greater degree than any negligence of the person, firm or corporation causing such damage, or unless any negligence of the person so injured, damaged or killed, is of greater degree than the combined negligence of any persons, firms or corporations causing such damage."
Because we hold in Part II, *infra,* that Holliday's assumption-of-risk defense did not avail to him and was hence improperly invoked, we reserve for another day the broader issue whether, and in what context, if any, assumption of risk may constitute a "complete defense" under Oklahoma's present-day comparative negligence regime.

3. *Cruden v. Fentham,* 2 Esp. 685, 170 Eng.Rep. 496 [1799], is the first clearly distinguishable application of the doctrine. The defense received even greater recognition in *Priestly v. Fowler,* 3 M. & W. 1, 150 Eng.Rep. 1030 [1837], a master-and-servant case.
Within the meaning of our fundamental law, Art. 23, § 6, Okl. Const., *infra,* assumption of risk is synonymous with its common-law namesake. See *St. Louis–San Francisco Ry. Co. v. Robinson,* 99 Okl. 2, 225 P. 986 [1924] (syllabus 5); *Incorporated Town of Sallisaw v. Wells,* 90 Okl. 78, 216 P. 118 [1923] (syllabus 1); *Sapulpa Refining Co. v. Sapulpa,* 84 Okl. 93, 202 P. 780 [1922] (syllabus 3) and *Wichita Falls & N.W. Ry. Co. v. Groves,* 81 Okl. 34, 196 P. 677 [1921] (syllabus 4).
The terms of Art. 23, § 6, Okl. Const., are:
"The defense of contributory negligence or of *assumption of risk* shall, in all cases whatsoev-

er, *be a question of fact,* and shall, at all times, be left to the jury." [Emphasis ours.]

4. The defense is variously called express assumption of risk and implied primary assumption of risk. See *infra* notes 7 and 8 and Note, Assumption of Risk Merged with Contributory Negligence: *Anderson v. Ceccardi,* 45 Ohio State L.J. 1059, 1062–1063 [1984].

5. See *Tiller v. Atlantic Coast Line R. Co.,* 318 U.S. 54, 58–61, 63 S.Ct. 444, 447–448, 87 L.Ed. 610 [1943]; *Lyons v. Redding Construction Company,* 83 Wash.2d 86, 515 P.2d 821, 823 [1973]; and Pound, The Economic Interpretation and the Law of Torts, 53 Harv.L.Rev. 365, 373 [1940]. Today, assumption of risk, while no longer invocable to defeat a worker's on-the-job injury claim, 85 O.S.Supp.1985 § 11 and Note, *supra* note 4 at 1061, n. 21, retains its place in product liability suits by workers against third-party manufacturers of harm-dealing products used in the workplace. See Prosser and Keeton on The Law of Torts, § 68, p. 486 [5th ed. 1984]. The proper verbalization of this manufacturer's defense is *voluntary assumption of or exposure to the risk of a known defect. Kirkland v. General Motors Corp., Okl.,* 521 P.2d 1353, 1366 [1974] and *McMurray v. Deere and Company, Inc.,* 858 F.2d 1436 [10th Cir.1988].

6. See *Frisco Lumber Co. v. Thomas,* 42 Okl. 670, 142 P. 310 [1914] (syllabus 3) and *Tiller v. Atlantic Coast Line R. Co., supra* note 5, 318 U.S. at 59, 63 S.Ct. at 447. The employee "assumes the risk" of hazards or dangers other than the unsafety of his workplace. *Kansas City, M. & O. Ry. Co. v. Costa,* 69 Okl. 132, 170 P. 892, 895 [1918]; *Alko–Nak Coal Co. v. Barton,* 88 Okl. 212, 212 P. 591, 594 [1923]; *Osage Coal & Mining Co. v. Sperra,* 42 Okl. 726, 142 P. 1040, 1043 [1914]; and *Coalgate Co. v. Hurst,* 25 Okl. 588, 107 P. 657, 659–660 [1910], error dismissed 225 U.S. 697, 32 S.Ct. 838, 56 L.Ed. 1262 [1911].

This aspect of risk assumption survives today mainly in situations where a plaintiff either expressly agrees that the defendant will be held blameless for the plaintiff's failure to exercise due care for his protection in certain circumstances,[7] or where the defendant does not owe a duty of care to the plaintiff.[8] In the former, the plaintiff expressly consents to relieve the defendant of an obligation of conduct to him and to take the chance of injury from a known risk arising from what the defendant is to do or leave undone.[9] In the latter instance, the defendant would not be negligent because he owes no duty to the plaintiff.[10] A

7. Restatement (Second) of Torts § 496B [1965]. The terms of § 496B are:
"A plaintiff who by contract or otherwise *expressly agrees to accept a risk of harm* arising from the defendant's negligent or reckless conduct cannot recover for such harm, unless the agreement is invalid as contrary to public policy." [Emphasis added.]
See *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123, 1129 [La.1988]; Note, *supra* note 4 at 1061–1062 and Prosser and Keeton, *supra* note 5 at 482–484 and discussion in *infra* note 8.

8. Risk assumption as a tort defense concept is commonly divided into three categories. *The first of these*, called *express assumption of risk*, includes those cases where the plaintiff *expressly contracts* with another not to sue for any future injuries which may be caused by that person's negligence. *Murray v. Ramada Inns, Inc., supra* note 7 at 1129; *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 451 N.E.2d 780, 783 [1983]; see also Restatement (Second) of Torts § 496B [1965], *supra* note 7, and V. Schwartz, Comparative Negligence, § 9.1 at 154 [1974]. Express consent, which might also be called "waiver" or "release," will usually bar recovery by the plaintiff unless there is a statute or established public policy against it. *Murray v. Ramada Inns, Inc., supra* note 7 at 1129.
In the *second category*, called *implied primary assumption of risk*, are cases where the plaintiff has made no express agreement to release the defendant from future liability but is presumed to have consented to such a release because he has voluntarily participated in a particular activity or situation which involves inherent and well-known risks. See *Ogden v. Rabinowitz*, 86 R.I. 294, 134 A.2d 416, 419–420 [1957] (voluntary participant in a lawful game or sport assumes risks ordinarily incident thereto—i.e., the risk of obvious danger or a risk that is a matter of common knowledge); *Provence v. Doolin*, 91 Ill.App.3d 271, 46 Ill.Dec. 733, 414 N.E.2d 786, 793–794 [1980] (a pit crew member was struck by a race car during a race); *Hotels El Rancho v. Pray*, 64 Nev. 591, 187 P.2d 568, 578 [1947] (participant injured in crosscountry horserace); *Heldman v. Uniroyal, Inc.*, 53 Ohio App.2d 21, 371 N.E.2d 557 [1977] (professional tennis player was injured while playing on a defective synthetic court surface); *Tavernier v. Maes*, 242 Cal.App.2d 532, 51 Cal.Rptr. 575 [1966] (second baseman in softball game was injured when runner slid into him and knocked him down.); *Lobsenz v. Rubinstein*, 283 N.Y. 600, 28 N.E.2d 22 [1940] (tennis player who knew of dangerous condition of tennis court assumed risk of injury); and see Speiser, Krause and Gans, *infra* note 17 at 664–671 (§ 12:59, Participation in sports or games). *Implied primary assumption of risk has been described as an alternate expression of the proposition that the defendant was not negligent. Implied primary assumption of risk is, arguably, not a true negligence defense since no duty is ever owed the plaintiff and no cause of action for negligence is ever alleged. Duffy v. Midlothian Country Club, infra,* 90 Ill. Dec. at 241, 481 N.E.2d at 1041; *Meistrich v. Casino Arena Attractions, Inc., infra,* 155 A.2d at 93 and *Murray v. Ramada Inns, Inc., supra* note 7 at 1129.
In the *third category*, called *implied secondary assumption of risk*, are those cases in which the plaintiff *implicitly assumes the risk* created by the plaintiff's negligence. Even though the defendant in such cases is found to be at fault, the plaintiff is barred from recovery on the ground that he knew of the unreasonable risk created by the defendant's conduct and voluntarily chose to encounter that risk. The plaintiff's conduct in those cases has been viewed as functionally similar to contributory negligence. See *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90, 93 [1959]; *Springrose v. Willmore*, 292 Minn. 23, 192 N.W.2d 826, 827 [1971]; *Duffy v. Midlothian Country Club*, 135 Ill.App.3d 429, 90 Ill.Dec. 237, 241–242, 481 N.E. 2d 1037, 1041–1042 [1985]; *Blackburn v. Dorta*, 348 So.2d 287, 290 [Fla.1977]; *Murray v. Ramada Inns, Inc., supra* note 7 at 1129; and Note, *supra* note 4 at 1062–1063.

9. See, e.g., *Duffy v. Midlothian Country Club, supra* note 8, 90 Ill.Dec. at 241, 481 N.E.2d at 1041, and Prosser and Keeton, *supra* note 5 at 480–481.

10. Whether the plaintiff's consent is express or implied, the result is that the defendant is *relieved of the legal duty* to the plaintiff and cannot be charged with negligence. See Prosser and Keeton, *supra* note 5 at 481.
Risk assumption is used in this sense to describe the occupier's lack of liability for open and obvious hazards on the land. An invitee "assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no legal duty to reconstruct or alter the premises so as to obviate known and obvious dangers." *City of Tulsa v. Harman*, 148 Okl. 117, 299 P. 462, 468 [1931]; *Hull v. Newman Memorial Hospital, Inc.*, Okl., 379 P.2d 701,

classic example of this type of risk assumption is afforded by a fan injured while attending a sports event.[11] The fan is deemed to have consented that the game may be played without taking any precautions to protect him from stray balls, and the law takes notice of the existence of a special "relational" duty between the fan and the owner.

Another aspect of risk assumption arises from Roman law and is the source of much confusion. This concept is encapsulated in the maxim *volenti non fit injuria*, which means: If one, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from recovery for the resulting injury. The maxim is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent.[12] A *subjective* standard is applied in evaluating a plaintiff's knowledge, comprehension and appreciation of the risk.[13]

 The touchstone of the assumption-of-risk defense is *consent* to harm and not heedlessness or indifference. *In the context of general negligence law, it is not true that in every case where the plaintiff voluntarily encounters a known danger he necessarily consents to any future negligence of the defendant.* A pedestrian who crosses the street in the middle of a block through a stream of traffic traveling at excessive speed cannot be deemed to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall.[14] This is simply a

---

703 [1963]; *Harrod v. Baggett*, Okl., 418 P.2d 652, 655 [1966]; *C.R. Anthony Company v. Million*, Okl., 435 P.2d 116, 117 [1967]; *Buck v. Del City Apartments, Inc.*, Okl., 431 P.2d 360, 365 [1967]; *Beatty v. Dixon*, Okl., 408 P.2d 339, 343 [1965]; *Reed v. First National Bank of Wagoner*, Okl., 405 P.2d 10, 13 [1965]; *Safeway Stores, Inc. v. McCoy*, Okl., 376 P.2d 285, 286–287 [1962] and *Safeway Stores, Incorporated v. Sanders*, Okl., 372 P.2d 1021, 1022–1023 [1962].

**11.** See *Lang v. Amateur Softball Association of America*, Okl., 520 P.2d 659 [1974]; Annot., Liability To Spectator At Baseball Game Who Is Hit By Ball Or Injured As Result Of Other Hazards Of Game, 91 ALR3d 24, 46–50 (§ 6, Assumption of Risk) [1979]; Speiser, Krause and Gans, *infra* note 17, at 673–678 (§ 12.61, Attending sport events and exhibitions as spectator); and Prosser and Keeton, *supra* note 5 at 481.

**12.** For Oklahoma cases recognizing the *volenti* doctrine, see *Davis v. Whitsett*, Okl., 435 P.2d 592, 599 [1967]; *Briscoe v. Oklahoma Natural Gas Company*, Okl., 509 P.2d 126, 129 [1973] and *Centric Corp. v. Morrison–Knudsen Co.*, Okl., 731 P.2d 411, 419 [1986]; for other jurisdictions discussing the doctrine, see *Gray v. E.J. Longyear Company*, 78 N.M. 161, 429 P.2d 359, 362 [1967]; *Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368, 379 [Tex.1963]; *Munson v. Bishop Clarkson Memorial Hospital*, 186 Neb. 778, 186 N.W.2d 492, 494 [1971]; *Walsh v. West Coast Coal Mines*, 31 Wash.2d 396, 197 P.2d 233, 238–239 [1948]; *Lyons v. Redding Construction Company, supra* note 5, 515 P.2d at 822–826; *Murray v. Ramada Inns, Inc., supra* note 7 at 1127 and see Black's Law Dictionary, 5th ed., p. 1412 [1979].
The *volenti* principle, which means that a person who consents to an act is not wronged by it, is predicated on the theory of knowledge and

appreciation of the danger and voluntary assent to the risk associated with it. The doctrine affords a universally recognized defense in products liability actions. See, Annot., *Products Liability: Contributory Negligence or Assumption of Risk as Defense Under Doctrine of Strict Liability in Tort*, 46 ALR3d 240, 253–256, § 5 [1972]; Annot., *Distinction Between Assumption of Risk and Contributory Negligence*, 82 ALR2d 1218 [1962] and Joseph W. Little, *Torts: The Civil Law of Reparation for Harm Done by Wrongful Act*, § 9.02, pgs. 435, 442–443 [1985]; see also, Shields v. Morton Chemical Company, 95 Idaho 674, 518 P.2d 857, 859–860 [1974] and *McMurray v. Deere and Company, Inc., supra* note 5.
The *volenti* maxim reflects the Roman law's notion of legal wrong or *injuria*. The principle embodied in the maxim is that a loss inflicted by one's *voluntary act or submission* is not actionable, i.e., one who voluntarily exposes himself to a known, appreciated and avoidable danger may not recover for injuries occasioned by the exposure. Dig. 47, 10, 1, 5 (*Quia nulla injuria est, quae in volentem fiat*); see Burdick, *Principles of Roman Law*, pg. 504 [1938]. The *volenti* doctrine is expressed as a common-law rule both in *Cruden v. Fentham, supra* note 3 and *Priestley v. Fowler, supra* note 3.

**13.** See *infra* note 19 for a comparison of the *subjective* standard of primary assumption of risk with the *objective* reasonable-man standard of contributory negligence see also, *McMurray v. Deere and Company, Inc., supra* note 5.

**14.** Restatement (Second) of Torts § 496C, Comment h; Prosser and Keeton, *supra* note 5 at 485 and 490; see also *Rogers v. Kelly*, 284 Ark. 50, 679 S.W.2d 184, 186 [1984], citing to *Prosser, supra* note 5 at 485 and *Rutter v. Northeastern*

case for application of contributory negligence. A plaintiff may expose himself to potential harm and not consent to relieve ·the defendant of any future duty to act with reasonable care.[15] The defense of risk assumption is proper in the relational context previously mentioned but it should not be allowed as a substitute for what is in reality contributory negligence. In sum, where neither the law, status, nor contract calls for the application of some relational duty between the parties, which is distinct from that imposable by general negligence, neither *assumption of risk* nor *consent to injury* may be inferred in a negligence-based tort suit from a mere face-to-face chance encounter of one stranger with another.[16]

## II.

## CONTRIBUTORY NEGLIGENCE DISTINGUISHED FROM ASSUMPTION OF RISK

■ Contributory negligence, which was introduced to the common law a few years after assumption of risk first made its appearance,[17] is that conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, which falls below the standard of one to which he is required to conform for his own protection.[18] The test for contributory negli-

*Beaver Cty., Etc.,* 496 Pa. 590, 437 A.2d 1198, 1203 [1981].

**15.** Prosser and Keeton, *supra* note 5 at 485. See, e.g., *Story v. Howes,* 41 A.D.2d 925, 344 N.Y.S.2d 10 [1973] (a bike rider on a busy street does not assume the risk of being hit by a car).

**16.** Assumption-of-risk defense is applicable to a situation where two or more persons are associated together in, or enter as a matter of law into, some form of *voluntary relationship,* whether by contract or otherwise (e.g., physician—patient, attorney—client, landowner/occupier—entrant, ballpark owner—participant/spectator, etc.) and assume such a risk as will *destroy any duty* which the defendant might owe to the plaintiff. General negligence, which is conduct that creates an undue *risk of harm to others* and *imposes a duty*—an obligation of conduct to another person—is not applicable when these special relations may validly exist. Contributory negligence, in this sense, is also distinguishable from general negligence in that it is conduct which involves an undue *risk of harm to the actor himself.* See Prosser and Keeton, *supra* note 5 § 65 at 453.

The attractive nuisance doctrine vividly illustrates how risk assumption is used in the context of status-based duties or in relational negligence. "'The [attractive nuisance] doctrine may be invoked where the child injured by reason of an attractive nuisance is an *invitee, a licensee* or *trespasser;* a *child under seven years of age,* or, in the *absence of evidence of capacity, between seven and fourteen years of age, being presumed to be incapable of guilt of more than technical trespass.'"* [Emphasis added.] *Keck v. Woodring,* 201 Okl. 665, 208 P.2d 1133, 1135 [1948], quoting from *Ramage Mining Co. v. Thomas,* 172 Okl. 24, 44 P.2d 19, 20 [1935]. The attractive nuisance doctrine, a narrow exception carved out of the general doctrine that gives the occupier immunity from liability for open and obvious hazards upon the land, is a 19th century common-law development. It is traceable to *Lynch v. Nurdin,* 1 Q.B. 29, 41 E.C.L. 422, 113 Eng.Rep. 1041 [1841], where a horse and cart were left unattended on the street. The owner was held liable for an injury to a *seven-year old child-trespasser* who was playing in the cart. See *Salt River Valley Water Users' Ass'n v. Compton,* 40 Ariz. 282, 11 P.2d 839, 841 [1932] for a discussion of the *Lynch* decision.

**17.** The *assumption of risk* and *contributory negligence* defenses, although closely allied, are conceptually distinguishable. While they may arise under the same set of facts and thus sometimes overlap each other, they are founded on separate and distinct principles of law. See *Kleppe v. Prawl,* 181 Kan. 590, 313 P.2d 227, 230–231 [1957]; *White v. McVicker,* 216 Iowa 90, 246 N.W. 385, 386 [1933]; *Watterlund v. Billings,* 112 Vt. 256, 23 A.2d 540, 543 [1942] and *Landrum v. Roddy,* 143 Neb. 934, 12 N.W.2d 82, 89 [1943]. The latter doctrine is the product of the law of negligence whose source is traceable to *Butterfield v. Forrester,* 11 East, 60, 103 Eng. Rep. 926 [K.B.1809]. It first entered American jurisprudence fifteen years later in the cases of *Smith v. Smith,* 19 Mass. [2 Pick.] 621 [1824] and *Washburn v. Tracy,* 2 Vt. (2 D.Chip 50) 128 [1824]. See Speiser, Krause and Gans, 3 The American Law of Torts § 12.2, p. 514–516 [1986]. Assumption of risk, on the other hand, had crystalized much earlier in the form of the ancient *volenti* maxim. See Lyons v. Redding Construction Company, *supra* note 5, 515 P.2d at 822.

**18.** Restatement (Second) of Torts, § 463. The terms of § 463 are:

"Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause co-operating with the negli-

gence relies on an *objective* standard [19] of conduct that falls below the degree of care which would be exercised by a reasonable person. The inquiry is into whether the plaintiff's conduct conforms to that of a reasonably prudent man in the protection of himself and, if not, whether it is a contributing cause to the injury. Contributory negligence implies the omission of a duty on the part of the injured person and excludes the idea of willfulness.[20]

■ What is in actuality lack of due care or heedlessness on the part of a plaintiff is often mislabeled assumption of risk.[21] For risk assumption to avail as a defense to a tort claim for negligence there must either be an express agreement, a pre-existing status between the defendant and plaintiff, or an element of consent to the harm that is known and appreciated by the plaintiff. *Anything falling outside these areas is simply contributory negligence.*

■ In the present case, it cannot be said that the plaintiff consented to being thrown from the car when he jumped onto it. The plaintiff may have been reckless and exhibited a lack of due care, but that would require a jury charge on contributory negligence and not on assumption of risk. The evidence clearly warranted the instruction on contributory negligence, which the trial court gave, but not one on risk assumption. Because the flawed charge gave the defendant the benefit of a *complete defense* [22] to which he was not entitled, the trial court's order granting plaintiff's motion for new trial rests clearly on legally tenable grounds.[23]

The trial court's order granting a new trial is affirmed.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES, LAVENDER, ALMA WILSON and SUMMERS, JJ., concur.

---

gence of the defendant in bringing about the plaintiff's harm."

**19.** Contributory negligence is judged by the *objective* standard of the reasonable man; it arises when the plaintiff fails to exercise due care and looks to the reasons why the plaintiff took on the risk. In contrast, assumption of risk is judged by the *subjective* standard of whether the plaintiff knew of the existence of, and voluntarily accepted, the risk and appreciated its unreasonable character. The subjective standard is concerned with what the particular plaintiff in fact sees, knows, understands and appreciates about the risk in a known situation. Assumption of the risk arises regardless of the due care used. Restatement (Second) of Torts § 496D, Comment c; *Murray v. Ramada Inns, Inc., supra* note 7 at 1127; *Rutter v. Northeastern Beaver Cty., Etc., supra* note 14, 437 A.2d at 1204; *Iadevaia v. Aetna Bridge Co.,* 120 R.I. 610, 389 A.2d 1246, 1249 [1978] and *Antcliff v. Datzman,* 436 N.E.2d 114, 120 [Ind.App.1982]; Prosser and Keeton, *supra* note 5 at 487–488 and Dooley, 1 Modern Tort Law § 6.04, p. 180 [1982].

**20.** *See Walsh v. West Coast Coal Mines, supra* note 12, 197 P.2d at 238–239; *Detrick v. Garretson Packing Company,* 73 Wash.2d 804, 440 P.2d 834, 837 [1968]; *Lyons v. Redding Construction Company, supra* note 5, 515 P.2d at 822–826 and *Murray v. Ramada Inns, Inc., supra* note 7 at 1127.

**21.** Consider *Owens v. Union P.R. Co.,* 319 U.S. 715, 720, 63 S.Ct. 1271, 1274, 87 L.Ed. 1683 [1943], in which the Court states:

"The common-law defenses, assumption of risk, contributory negligence, and the fellow-servant rule were originated and developed in common ground. Not entirely identical in conception, they conjoined and overlapped in many applications. The overlapping areas first concealed, then created a confusion which only served to create more; so that in time the three became more, rather than less, indistinguishable. *And assumption of risk took over also, in misguided appellation, large regions of the law of negligence. What in fact was absence of departure from due care by the defendant came to be labelled 'assumption of risk'."* [footnotes omitted] [Emphasis supplied.]

**22.** For definition of complete or absolute defense see *supra* note 1.

**23.** "Where it appears that the defeated litigant did not present valid reasons for a new trial, and the record is barren of sufficient legal grounds for ordering a reexamination of fact issues, this Court will hold that none existed and that the trial court abused its discretion in sustaining the motion." *Bishop's Restaurants, Inc. of Tulsa v. Whomble,* Okl., 355 P.2d 560, 564 [1960] and *Dodson v. Henderson Properties, Inc.,* Okl., 708 P.2d 1064, 1065–1066 [1985]. Conversely, when the record, as here, discloses a tenable legal ground for the trial court's action, its order granting a new trial must be affirmed. See *Barnhart v. International Harvester Company,* Okl., 441 P.2d 1000, 1004–1005 [1968] and *Chapman v. Tiger,* Okl., 356 P.2d 571, 580 [1960].

KAUGER, J., concurs in part and dissents in part.

SIMMS, J., dissents.