1999 OK CIV APP 3

**Harold BENNETT, Appellee,**

v.

**2 POOR WHITE BOYS, INC., d/b/a Covergirls, Appellant.**

**No. 89,833.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Aug. 25, 1998.

Rehearing Denied Oct. 5, 1998.

Certiorari Denied Jan. 14, 1999.

---

Carol E. Keeter, Greg Haubrich, The Haubrich Law Firm, Oklahoma City, Oklahoma, For Appellee.

Gloyd L. McCoy, J.W. Coyle, III, Coyle & McCoy, Oklahoma City, Oklahoma, For Appellant.

## OPINION

STUBBLEFIELD, P.J.

¶ 1 This is a tavern owner's appeal from judgment entered on jury verdict in favor of plaintiff in his action to recover for injuries sustained in an accident while a passenger in a vehicle driven by his allegedly intoxicated brother. Based on our review of the record on appeal and applicable law, we affirm.

¶ 2 On the afternoon of January 2, 1995, between 2:30 and 2:45 p.m., Plaintiff Harold Bennett accompanied his two brothers, Henry Daniels and Alec Mathis, and his stepfather, David Coffman, on a visit to "Covergirls" strip club. The purpose of the outing was to celebrate Daniels' twenty-first birthday. Plaintiff and Daniels rode together in one vehicle and their stepfather and Mathis drove in another vehicle. Coffman had to leave the club early, but purportedly there were arrangements for Mathis and a third party, who was to be picked up later, to be "designated drivers" for the occasion.

¶ 3 During a period of approximately three hours, Daniels and Plaintiff drank together, with Daniels consuming eight or nine beers[1] at the table and one "shot" drink of

---

1. The record indicates that he may have consumed as many as ten to twelve beers in that time period.

tequila at the bar. Plaintiff consumed close to the same amount of alcohol. Both of them were involved in ordering the drinks.

¶4 When Coffman decided to leave, he purportedly gave Plaintiff and Daniels $20 each and told both of them to "stay put." This was because Mathis was going to go pick up the other designated driver and return to the club with him in about an hour.

¶5 After Coffman and Mathis left, Plaintiff and Daniels ordered another pitcher of beer, and a dispute arose with the waitress over the amount of change she brought. Daniels and the waitress argued, with Daniels becoming angry and claiming he had been "short-changed." The "bouncers" then came to the table and told Daniels to leave the club. Daniels, who still was angry, left the club, jumped into his truck and started burning rubber and "power braking" around the parking lot. The bouncers came back into the club and "escorted" Plaintiff to the door. Several club patrons, including Plaintiff, heard the noise from Daniels' vehicle and went outside and observed the parking lot full of smoke.

¶6 Plaintiff, in what he claimed was an attempt to calm his brother down, climbed into the truck with Daniels. But Daniels exited the strip club parking lot and began driving at an excessive rate of speed down Interstate 35. An automobile accident ensued that left Plaintiff seriously injured. He filed this action naming his brother, the uninsured motorist carrier and Covergirls as parties defendant. Daniels and the insurer were dismissed from the action after Plaintiff settled his claims against them, and the lawsuit continued against Covergirls only.

¶7 Covergirls moved for summary judgment, claiming: (1) Plaintiff could not recover as a matter of law because he assumed the risk of riding in the vehicle driven by his intoxicated brother; (2) Plaintiff was not the innocent person the supreme court wanted to protect when it established dramshop liability in *Brigance v. Velvet Dove Restaurant, Inc.*, 1986 OK 41, 725 P.2d 300; and, (3) Daniels did not appear "noticeably intoxicat-

ed" at the time he was served alcoholic beverages by Covergirls' employees. The trial court overruled the motion.

¶8 The case proceeded to jury trial. After Plaintiff rested, Covergirls did not present any additional evidence. The jury returned a verdict awarding Plaintiff compensatory damages in the amount of $25,000. However, the jury found Plaintiff to be forty percent negligent, and the verdict was reduced accordingly.[2] The jury also awarded Plaintiff $10,879.43 in punitive damages. Covergirls appeals.

¶9 On appeal, Covergirls first claims that the judgment should be vacated because, as it pointed out in its motion for summary judgment, Plaintiff is not the innocent person whose protection was contemplated when the rule in *Brigance* was fashioned. According to Covergirls, Plaintiff was intoxicated, knew Daniels was intoxicated and, in fact, actively participated in events that led to his brother's intoxication. Covergirls claims that, because Plaintiff "voluntarily created the situation that led to his injuries and was aware of the danger in riding in a vehicle with an intoxicated driver," he should be denied recovery. In a related issue, Covergirls relies on *Grantham v. Tulsa Club, Inc.*, 1996 OK CIV APP 38, 918 P.2d 410, for the proposition that it could not be liable when the evidence did not establish that Daniels was intoxicated to a degree that would be "readily noticeable" when he was served alcoholic beverages at the club.

■ ¶10 This first issue presents the question of whether, under Oklahoma law, an intoxicated adult passenger of a vehicle has a cause of action against the tavern that served alcohol to both the passenger and the intoxicated driver of a vehicle that subsequently was involved in an accident. We believe that such a claim, subject to defenses to liability, does exist.

¶11 In *Ohio Casualty Insurance Co. v. Todd*, 1991 OK 54, ¶19, 813 P.2d 508, 512, the supreme court held that "[t]he public policy of protecting the innocent from the

---

2. The parties stipulated that the settlement moneys from Daniels and the insurer would operate as an offset to any award of compensatory dam-

ages against Covergirls. The judgment recites that "the compensatory damages are therefore offset by prior recovery in their entirety."

intoxicated" would not be furthered by an extension of *Brigance* to provide a cause of action for an adult who voluntarily consumes an excessive amount of alcohol and then injures himself as a result of *his own inability to operate his vehicle*. However, although the court in *Todd* did not expressly rule on an intoxicated passenger's right of recovery against a tavern owner, in addressing concerns raised in a dissenting opinion by Justice Lavender, the court did state:

> The opinion concurring in part and dissenting in part argues that the creation of a new cause of action would be consistent with *Brigance*. In so urging, it is claimed that no logical reason exists for distinguishing between the intoxicated passenger and the intoxicated driver. We disagree. *The difference is obvious and dispositive. One individual got behind the steering wheel of the automobile and drove it in a drunken condition; the other one didn't. Societal considerations aimed at deterring drunken driving forbid the driver's recovery of damages; no such policy need preclude a non-driver's claim.*

*Id.* at ¶ 16, 813 P.2d at 512 (emphasis added).

¶ 12  Dramshop liability in Oklahoma is of judicial, not statutory origin. The cause of action is based on public policy, id., sounds in negligence and, therefore, comparative negligence principles govern. *Brigance,* 1986 OK 41 at ¶ 24, 725 P.2d at 305; 23 O.S.1991 § 13. The cases from other jurisdictions cited by Covergirls in its appellate briefs, which precluded passenger recovery, are not particularly helpful or are simply inapplicable be-

cause they are based on specific language of dramshop statutes or they do not apply comparative negligence.[3]

¶ 13  We also are not persuaded by Covergirls' argument that *Brigance* is not applicable herein because Plaintiff was an adult at the time of his accident while the plaintiff passenger in *Brigance* was a minor. In framing the issue before it, the court in *Brigance* stated:

> The issue before this court is whether, absent statutory authority to the contrary, a third party passenger injured by an intoxicated driver has a civil action against a commercial vendor for on the premises consumption for the negligent sale of an intoxicating beverage to a person the vendor knew or should have known was noticeably intoxicated and whose consumption of alcohol was the alleged cause of injuries.

1986 OK 41 at ¶ 3, 725 P.2d at 302. In the recitation of facts, the court did note that the injured passenger, Shawn Brigance, was a minor at the time of the injuries, but that was not the focus of the court's modification of the common-law doctrine of tavern owner nonliability.[4] Instead, the court emphasized this point:

> In the "horse and buggy" days the common law may not have been significantly affected by the sale of liquor to an intoxicated person. The common law of nonliability was satisfactory. With today's car of steel and speed it becomes a lethal weapon in the hands of a drunken imbiber.

*Id.* at ¶ 16, 725 P.2d at 304. The court found a duty imposed by both statute and common law principles.[5] The duty was to "exercise

---

3.  For example, Covergirls cites the case *Tome v. Berea Pewter Mug, Inc.,* 4 Ohio App.3d 98, 446 N.E.2d 848 (1982), as being "directly on point." However, comparative negligence principles were not applied because the cause of action arose prior to the effective date of the state's comparative negligence statute. In *Goss v. Richmond,* 146 Mich.App. 610, 381 N.W.2d 776, 777 (1985), also cited by Covergirls, the court noted that a claim under the state's dramshop act was a "legislatively created exclusive remedy, not a common-law negligence action." *Martinson v. Monticello Mun. Liquors,* 297 Minn. 48, 209 N.W.2d 902 (1973), involved application of a legislative remedy and application of a "complicity" theory, prior to Minnesota's adoption of

comparative negligence and amendment of its Dram Shop Act to include comparative fault.

4.  The court noted that the tavern "served intoxicating beverages to a group of minors, including one Jeff Johnson," *id.* at ¶ 2, 725 P.2d at 302, who was the driver of the vehicle causing the one-car accident in which Shawn was injured. The status of the driver and passenger as minors is not further mentioned in the opinion.

5.  The statute involved was 37 O.S. Supp.1985 § 537, which provided that no person shall (1) "[k]nowingly sell, deliver, or furnish alcoholic beverages to any person under twenty-one (21)

reasonable care in selling or furnishing liquor to persons who by previous intoxication may lack full capacity of self-control to operate a motor vehicle and who may subsequently injure a third party." *Id.* at ¶ 18, 725 P.2d at 304.

¶ 14 *Tomlinson v. Love's Country Stores,* 1993 OK 83, 854 P.2d 910, involved an action by the estate of a deceased minor against a commercial vendor of beer for consumption off premises. The vendor sold beer to three minors—including the deceased, Brad Tomlinson—and the petition alleged that the vendor knew that the minors intended to drink the beer while driving or riding in a motor vehicle. The minor driver became intoxicated, lost control of the vehicle and passenger Tomlinson sustained injuries that resulted in his death. In finding that the petition stated a legally cognizable claim, the court stated:

> In analyzing *Brigance,* the majority opinion in [*Todd*] commented that the purpose behind Section 537(A)(2) was to protect innocent third parties. *Brigance* reveals that Shawn Brigance was in the group of minors who had been drinking, yet *Todd* includes him as an "innocent third party." A jury may conclude that even if Brad Tomlinson had also been drinking, as a passenger in the motor vehicle, he was an innocent third party, subject to negligence defenses.

*Id.* at ¶ 22, 854 P.2d at 917 (footnotes omitted).

¶ 15 It is interesting that the court in *Tomlinson* distinguished its opinion in *Sanders By and Through Sanders v. Crosstown Market, Inc.,* 1993 OK 25, 850 P.2d 1061. In *Sanders,* the majority affirmed the dismissal of an action involving a minor girl who had become drunk and drove after a minor friend gave her beer that he had purchased from the defendant. The court held that the injury to the girl was too remote from the sale of beer to the minor boy for a cause of action in common law negligence. But the court also noted that the seventeen-year-old girl's own "wilful intentional misconduct" of becoming drunk and driving also precluded recovery—it "placed her outside the limited exception to

the common law rule of non-liability for sellers of alcohol that we created in *Brigance.*" *Id.* at ¶ 16, 850 P.2d at 1064 (footnote omitted). This is further indication of the supreme court's view that there is an "obvious and dispositive" distinction between an intoxicated passenger and an intoxicated driver. *Todd,* 1991 OK 54 at ¶ 16, 813 P.2d at 512.

¶ 16 The foregoing authority demonstrates that, even when the person seeking to sue the tavern for injuries received from an intoxicated patron is a drinking companion who may also be intoxicated, his recovery is not barred as a matter of law. Such a passenger is certainly subject to "negligence defenses," but the public policy considerations that preclude the driver's recovery do not preclude the passenger's recovery. Accordingly, we find that the trial court did not err in denying summary judgment to Covergirls and in submitting the case to the jury.

■ ¶ 17 We next address the related contention by Covergirls, based on *Grantham v. Tulsa Club, Inc.,* 1996 OK CIV APP 38, 918 P.2d 410, that it cannot be held liable to Plaintiff because the evidence failed to demonstrate that Daniels exhibited visible signs of intoxication when he was served alcoholic beverages. We find this assertion without merit. There is ample evidence from which reasonable persons could conclude that Covergirls continued to serve Daniels alcoholic beverages when he was noticeably intoxicated. There was testimony regarding the timing and quantity of alcohol consumed by Daniels, which, except for the last pitcher of beer, was served to Daniels by the same waitress. There was also testimony that Daniels, during the time he was being served alcoholic beverages, became loud and boisterous, drummed on the table, attempted to take his shirt off and became belligerent.

■ ¶ 18 Covergirls next contends that, as a matter of law, assumption of the risk was present, precluded relief and, therefore, its motion for summary judgment should have been granted, or it should have a new trial because of the trial court's refusal to give an "assumption of the risk" instruction.

---

years of age;" or (2) "[s]ell, deliver or knowingly furnish alcoholic beverages to an intoxicated person or to any person who has been adjudged insane or mentally deficient."

Covergirls points out that, under Okla. Const art. 23, § 6, the defense of assumption of risk is a question of fact and is a matter for the jury. Again, we find no reversible error regarding this contention.

¶ 19 In *Thomas v. Holliday By and Through Holliday*, 1988 OK 116, ¶ 8, 764 P.2d 165, 169, the court explained:

> The touchstone of the assumption-of-risk defense is consent to harm and not heedlessness or indifference. *In the context of general negligence law, it is not true that in every case where the plaintiff voluntarily encounters a known danger he necessarily consents to any future negligence of the defendant.* A pedestrian who crosses the street in the middle of a block through a stream of traffic traveling at excessive speed cannot be deemed to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall. (Footnote omitted.)

The court also cautioned that the defense of assumption of risk "should not be allowed as a substitute for what is in reality contributory negligence." *Id.*, 764 P.2d at 170.[6]

¶ 20 Moreover, the Oklahoma constitutional provision cited by Covergirls does not require that the defense be submitted in the absence of evidence to support it. *Rogers v. Baptist General Convention of State of Oklahoma*, 1982 OK 69, 651 P.2d 672. In that regard, the "Notes on Use" for the assumption of risk instruction found at Oklahoma Uniform Jury Instructions—Civil (Second Edition), Instruction 9.14 provide:

> In order to give this Instruction the court must determine that there is evidence in the record of either 1) an express agreement by the plaintiff to assume the risk of injury, 2) a pre-existing relation between the defendant and plaintiff that alters the normal duty of care that the defendant would otherwise owe to the plaintiff, or 3) the plaintiff's consent to an

injury that the plaintiff knew and appreciated.

¶ 21 Herein, the third category was the only potentially applicable category. However, there simply was no evidence that Plaintiff consented to an injury he knew or appreciated. Plaintiff testified that he entered the vehicle in an attempt—however misguided—to calm down his angry brother. Other testimony from both Daniels and Plaintiff was that Plaintiff asked his brother to slow down, pull over and let him out of the vehicle because he did not want to get hurt and he did not "feel like dying." Under these circumstances, we find that the trial court was correct both in denying summary judgment to Covergirls on the issue and in refusing to give the requested instruction.

¶ 22 Covergirls' last contention is that the evidence presented at trial did not justify the award of punitive damages under "23 O.S. [Supp.] 1995 § 9," which requires a showing by *clear and convincing evidence* that the defendant has been guilty of "reckless disregard for the rights of others" or "has acted intentionally and with malice towards others." It maintains that the award should be vacated or, at minimum, reduced substantially.

¶ 23 However, the statutory language from which Covergirls quotes is actually *23 O.S. Supp.1995 § 9.1.* As Plaintiff correctly points out, this case was filed prior to the effective date of the 1995 revision of the punitive damages statute.[7] The revised statute provides that its application is prospective only: *"This section shall apply to all civil actions filed after the effective date of this act."* Section 9.1(G)(emphasis added) (footnote omitted). Here, the instructions reveal that the trial court correctly charged the jury that it could award Plaintiff punitive damages—in an amount not exceeding the amount of actual damages awarded—if it found by *a greater weight of the evidence* that Covergirls acted in wanton or reckless disregard of another's rights.

---

6. In *Holliday*, the plaintiff was a security guard who was injured when he attempted to grab and hold on to a moving vehicle driven by a man suspected of stealing a pastry from a grocery store. The court held that, under those facts, an instruction on assumption of the risk was not

warranted, even though the guard understood the danger in his act.

7. This case was filed on August 23, 1995. The effective date of section 9.1 was August 25, 1995.

¶24 Plaintiff characterizes the evidence as showing that Covergirls continued to serve Daniels while he was intoxicated, short-changed him, ejected the enraged patron from the club and failed to follow its own policies to avoid the known dangers and risk of sending an angry, drunken driver out on the streets. Plaintiff claims that the jury properly could have concluded from the evidence that Covergirls was guilty of the requisite conduct in "wanton or reckless disregard for the rights of another." 23 O.S.1991 § 9(A). We agree and note that a punitive damage claim rests peculiarly within the province of the jury. *Calvert v. J.B. Hunt Transport, Inc.*, 1993 OK CIV APP 88, 856 P.2d 1011. Furthermore, we do not find the punitive damage award of $10,879.43 to be excessive or the result of improper sympathy for Plaintiff.

¶25 Based on the foregoing rationale, the judgment entered on jury verdict in favor of Plaintiff is AFFIRMED.

¶26 REIF, J., and RAPP, J., concur.