2008 OK CIV APP 7

Charles SMITH, Surviving Spouse of Sabrina Smith, deceased, Plaintiff/Appellant/Counter–Appellee,

v.

Stephen G. TEEL, individually, and as Manager/Owner of Kongo's, and Jay Williams, as Manager/Owner of Kongo's, Defendants/Appellees,

and

Kongo's L.L.C., an Oklahoma limited liability corporation,[1] Defendant/Appellee/Counter–Appellant.

No. 104,640.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 15, 2007.

Certiorari Denied Jan. 14, 2008.

1. The record shows that Kongo's is a limited liability company.

Robert J. Haupt, John W. Cloar, Kathleen J. Adler, Shannon C. Smith, Leonard & Associates, P.L.L.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant/Counter–Appellee.

Gregory T. Tontz, Norman, Oklahoma, for Defendants/Appellees/Counter–Appellants.

KENNETH L. BUETTNER, Judge.

¶ 1 Plaintiff/Appellant/Counter–Appellee Charles Smith, surviving spouse of Sabrina Smith, appeals summary judgment entered in favor of Defendants/Appellees Stephen G. Teel and Jay Williams. Defendants Teel, Williams, and Kongo's L.L.C. filed a joint motion for summary judgment. In its Journal Entry, filed April 5, 2007, the trial court granted the motion as to Teel and Williams (collectively, "Defendants"), but overruled it as to Defendant/Appellee/Counter–Appellant Kongo's L.L.C. (Kongo's).[2] Smith's claims were for the wrongful death of his wife, who died after the car in which she was riding was hit by a drunk driver who had just left Kongo's. The undisputed facts in the record on appeal do not show that Defendants personally served alcohol to a noticeably intoxicated person who caused Smith's injury, nor do the facts show that Defendants may be personally liable for claims against the limited liability company, Kongo's. Defendants were entitled to judgment as a matter of law and we affirm.

 ¶ 2 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶ 3 Smith filed his Petition March 29, 2006. He alleged that on October 10, 2004, his wife, Sabrina Smith, was a passenger in a car stopped at a traffic light in Norman when the car was struck from behind by a car driven by Regina Bedell. Smith alleged that the collision occurred immediately after Bedell left Kongo's, after spending nearly seven hours drinking alcohol at Kongo's. Sabrina Smith died about nine hours after the collision.

¶ 4 Smith asserted that Defendants, as managers and owners of Kongo's, were present at Kongo's on October 10, 2004, held Oklahoma liquor licenses, and had a statutory and common law duty to exercise care in operating Kongo's and in selling alcohol to the public. Smith asserted that Defendants knew or should have known that Bedell was noticeably intoxicated October 10, 2004, and that Defendants and Kongo's continued to sell alcohol to Bedell for her consumption.

¶ 5 Defendants filed their Motion for Summary Judgment January 9, 2007. They noted that all public records about the collision indicated it occurred October 24, 2004, rather than October 10. Defendants listed 30 undisputed material facts.[3]

---

2. Kongo's filed a counter-appeal challenging the denial of summary judgment as to Kongo's. On the same day, Kongo's filed its Motion to Dismiss Appeal. Kongo's argued Smith's appeal was premature because the summary judgment order did not dispose of the claims against Kongo's. However, Smith previously had filed a Dismissal Without Prejudice, in which he dismissed his claims against Kongo's L.L.C. and Defendant "Kongo's Restaurant and Dance Club L.L.C." In its Answer, Kongo's indicated Kongo's was one L.L.C.: Kongo's L.L.C. d/b/a Kongo's Restaurant and Dance Club. The Oklahoma Supreme Court entered its Order July 2, 2007, in which it denied the motion to dismiss appeal. The Supreme Court noted that Smith filed his Petition in Error within 30 days of the dismissal without prejudice

of the claims against the remaining defendants. The Supreme Court held that this appeal "shall proceed for review of the issues raised in the appeal and the counter-appeal."

However, because Smith dismissed his claims against Kongo's, we do not consider the counter-appeal challenging the denial of summary judgment as to Kongo's. See *Myers v. Missouri Pacific R. Co.*, 2002 OK 60, 52 P.3d 1014.

3. Defendants' statement of facts included: 1) Kongo's filed its Articles of Organization, under the Oklahoma Limited Liability Company Act, September 24, 2002; 2) the operating agreement stated the purpose of Kongo's was to operate a restaurant and dance club in Norman; 3) the

¶ 6 Defendants noted that in Oklahoma, commercial vendors of alcohol sold for on-premises consumption may be liable where the vendor failed to exercise reasonable care not to sell liquor to a noticeably intoxicated person, citing *Brigance v. Velvet Dove Restaurant, Inc.*, 1986 OK 41, 725 P.2d 300. But, Defendants contended that it was undisputed that neither Teel nor Williams served alcohol to Regina Bedell while she was noticeably intoxicated. Defendants based this assertion on testimony from Bedell's husband that he purchased drinks for Bedell, and then two men who joined the Bedells purchased drinks for Regina Bedell. Defendants further relied on Bedell's husband's testimony that Bedell did not show visible signs of intoxication while she was at Kongo's. Bedell's husband testified that Bedell sat at a table and did not interact with any Kongo's staff. Defendants asserted that Smith was required to present evidence of Bedell's demeanor, actions, or physical state as observed or observable by Defendants in order to avoid summary judgment on a claim of selling alcohol to a visibly intoxicated person, citing *Battles v. Cough*, 1997 OK CIV APP 62, ¶ 18, 947 P.2d 600. Defendants also argued the fact that Bedell was involved in the

company was in good standing at all times during October, 2004; 4) Kongo's was formed by investors who contributed capital for the renovation of the building housing the club; 5) each investor received membership shares in proportion to his respective contribution; 6) Kongo's L.L.C. leased the building from Elite Lion, L.L.C., and none of the owners signed the lease in their individual capacities; 7) Kongo's opened September 23, 2004; 8) Kongo's was managed by a team of salaried managers who had industry experience when hired; 9) bartenders, wait staff, and security guards were hired and trained by the managers; 10) each employee received training and was required to read an employee handbook, which prohibited the sale of alcohol to visibly intoxicated persons and which provided for termination of employees violating that rule; 11) all receipts from the sale of alcohol and food were deposited into a Kongo's, L.L.C. checking account which was used solely for operating Kongo's; none of the investors used the account for personal business and none of the investors ever took a distribution from Kongo's; 12) on October 23, 2004, the number of staff present at Kongo's was appropriate for the number of customers, and Kongo's was unable to recall any reports from customers or employees about a visibly intoxicated person at Kongo's that night; 13) Teel was an investor who contributed money and legal services to Kongo's, for which he received an ownership interest; 14) Teel was primarily involved with Kongo's before it opened, including securing a permit from the City of Norman and planning and executing renovations to the building; 15) Teel participated in interviewing and hiring the managers of Kongo's; 16) after Kongo's opened, Teel was present at Kongo's about once per week, usually for dancing and socializing; Teel did not maintain an office at Kongo's, nor did he serve food or drinks or supervise bartenders, waitresses, or security guards; Teel did not receive any money or benefit from the sale of alcohol; 17) between September 23, 2004 and October 24, 2004, Teel did not receive notice that any visibly intoxicated person was served alcohol at Kongo's; 18) Teel was not contacted about Smith's claims until May 7, 2006 when Teel received a copy of Smith's Petition; Teel does not recall whether he was at Kongo's October 23, 2004; 19) Williams contributed cash to Kongo's, for which he received a membership interest; 20) Williams's duties at Kongo's were primarily payroll, building maintenance, and managing receipts and disbursements from the club; 21) Williams also participated in hiring managers before Kongo's opened; 22) Williams did not maintain an office at Kongo's and he held a full-time job as a firefighter for the City of Norman; Williams never served food or drink, supervised bartenders, waitresses, or security guards, nor did he receive any money or benefit for the sale of alcohol at Kongo's; 23) between September 23, 2004 and October 24, 2004, Williams did not receive notice that any visibly intoxicated person was served alcohol at Kongo's; 24) Williams was not contacted about Smith's claims until May 7, 2006 when Williams received a copy of Smith's Petition; Williams does not recall whether he was at Kongo's October 23, 2004; City of Norman records show Williams was scheduled to work at the Fire Department that evening; 25) neither Teel nor Williams saw a noticeably intoxicated person at Kongo's during the weekend of October 23–24, 2004; 26) Jeff Vander Putten, the manager working at Kongo's October 23, 2004, does not recall seeing a noticeably intoxicated person at Kongo's that evening, nor hearing complaints from staff or customers about a noticeably intoxicated person at Kongo's that evening; 27) Regina Bedell's husband, Gary Bedell, was present at Kongo's with Regina at all times on October 23–24, 2004, and he reported she had one margarita before arriving at Kongo's, she then consumed five beers and two mixed drinks at Kongo's, between 9:00 p.m. and 2:00 a.m.; 28) Regina Bedell did not purchase any of the drinks she consumed at Kongo's, her husband purchased some of the drinks for her, and two other men at the Bedells' table purchased some of the drinks; 29) Gary Bedell did not see Regina Bedell interact with any waitress, bartender, or other staff at Kongo's that night; 30) Gary Bedell did not see Regina Bedell show any signs of intoxication while she was at Kongo's.

collision and was convicted of driving while intoxicated after leaving Kongo's was not sufficient to create an issue of fact as to whether she was noticeably intoxicated at Kongo's, citing *Battles, supra,* and similar cases. Defendants distinguished cases where the evidence showed the intoxicated person was loud and boisterous before leaving the alcohol-vendor's premises. *Bennett v. Covergirls,* 1999 OK CIV APP 3, 973 P.2d 896; *McGee v. Alexander,* 2001 OK 78, 37 P.3d 800. Defendants asserted Smith had failed to present any evidence of similar loud or boisterous behavior by Bedell at Kongo's.

¶ 7 Defendants next claimed they were entitled to summary judgment because neither of them personally served alcohol to Bedell or any other person at Kongo's, and they were immune from liability for the obligations of Kongo's, pursuant to 18 O.S.2001 § 2022. Defendants averred that Oklahoma has not addressed piercing the veil of protection offered by a limited liability company to hold individuals liable for damages arising from the sale of alcohol. Defendants cited two Oklahoma cases in which the plaintiff sought to pierce the corporate veil in a case arising out of the sale of alcohol to an intoxicated person. See *King v. Modern Music Co.,* 2001 OK CIV APP 126, 33 P.3d 947 and *Pate v. Alian,* 2002 OK CIV APP 68, 49 P.3d 85. In *King,* this court held that where there was no evidence the individual corporate owners personally served the alcohol to the intoxicated person who caused the damage, nor did the owners know that their employee would serve an intoxicated person, there was no basis to pierce the corporate veil. The court explained that the *Brigance* holding was based on public policy grounds,

and found that extending the *Brigance* rule by holding individual corporate owners, who did not serve the noticeably intoxicated person, was error. Defendants argued also that the undisputed evidence showed neither of them personally leased the space Kongo's occupied, was employed by Kongo's, served food or drinks there, supervised employees, received money or benefit from the sale of alcohol, nor was present at Kongo's on the night of the collision. Defendants asserted there was no evidence showing either of them failed to abide by the Kongo's operating agreement. Finally, Defendants asserted there was no evidence that they were ever on notice that Kongo's may have sold alcohol to an intoxicated person, or that they knew or should have known that Kongo's would sell alcohol to a noticeably intoxicated person.

¶ 8 In his response, Smith first urged the trial court to strike each affidavit offered in support of the motion for summary judgment, because the affidavits do not state they are based on personal knowledge nor that the affiant is competent to testify.[4] The challenged affidavits are sworn under oath, as required by 12 O.S.2001 § 422. Rule 13 does not require the affidavits to state they are based on personal knowledge. The affidavits appear to be made on personal knowledge; each includes declarations of the affiant's actions and observations. Additionally, although the affidavits do not express that the affiant is competent to testify, Smith has not suggested that each affiant was not in fact competent to testify. The Oklahoma Evidence Code provides that every person is competent to be a witness, except as provided in the Code. 12 O.S.2001 § 2601. And,

---

4. Smith cited only District Court Rule 13 in support of his request to strike the affidavits. Rule 13(c) provides:

 c. The affidavits that are filed by either party shall be made on personal knowledge, shall show that the affiant is competent to testify as to the matters stated therein, and shall set forth matters that would be admissible in evidence at trial. The admissibility of other evidentiary material filed by either party shall be governed by the rules of evidence. If there is a dispute regarding the authenticity of a document or admissibility of any submitted evidentiary· material, the court may rule on the admissibility of the challenged material before disposing of the motion for summary judgment or summary disposition. A party challenging the admissibility of any evidentiary material submitted by another party may raise the issue expressly by written objection or motion to strike such material. Evidentiary material that does not appear to be convertible to admissible evidence at trial shall be challenged by objection or motion to strike, or the objection shall be deemed waived for the purpose of the decision on the motion for summary judgment or summary disposition. If a trial of factual issues is required after proceedings on a motion for summary judgment or summary disposition, evidentiary rulings in the context of the summary procedure shall be treated as rulings in limine.

Rule 13 provides that the court may rule on a request to strike affidavits in support of summary judgment. We find no abuse of discretion in the trial court's decision not to rule on Smith's request.

■ ¶ 9 Additionally in his objection to summary judgment, Smith denied Defendants' material facts numbered 4, 8–12, 14–18, 20–23, and 25–31. However, Smith did not present evidence showing a dispute of any *material* facts as to the liability of Teel or Williams.[5]

¶ 10 Specifically, Smith repeated his claim that Bedell must have been visibly intoxicated when she left Kongo's because she first collided with a car in the Kongo's parking lot, before driving out of the lot and onto the street where, "a little over half a mile from" Kongo's, she hit the car containing Smith's wife. Smith's response averred, however, that "(n)one of Kongo's alleged security guards or staff saw or noticed how intoxicated Regina Bedell was prior to her collision with a parked vehicle." Smith complained that the parking lot video tapes no longer existed. Smith further asserted that Bedell ran from the scene and police did not arrest her until 3 or 4 days later.

¶ 11 Smith asserted that Teel was the manager of Kongo's, based on Teel's signature as manager and owner, on Kongo's liquor license application. Smith claimed therefore that Teel lied either to the ABLE Commission or in his deposition testimony, where he claimed he was not the manager of Kongo's. Smith also claimed that 37 O.S. 2001 § 523.2(B) requires a limited liability company to notify the ABLE Commission in writing about any change in manager, or risk losing the L.L.C.'s liquor license. Smith noted that Teel testified his failure to inform the ABLE Commission that he was not Kongo's manager was an oversight, but Smith complained that the oversight continued for four years. Smith also noted that Teel regularly appeared before the ABLE Commission to defend Kongo's against charges it violated ABLE regulations, and that each time Teel claimed to be the manager/owner of Kongo's.

Smith claimed that Williams was also an owner of a smaller share of Kongo's. Smith claimed Teel and Williams were present at Kongo's on a regular basis and received benefits from Kongo's, at least in the form of free drinks taken out of the proceeds of the bar.

¶ 12 Smith argued that as managers and owners of Kongo's, Teel and Williams had a duty not to sell alcohol to noticeably intoxicated patrons, which duty they breached by serving Bedell. Smith contended that whether Williams or Teel was actually present at Kongo's on the night in question was not a material fact. Smith further argued that Defendants could not claim that they did not serve alcohol to Bedell by claiming that Bedell's husband or other patrons bought the drinks and served Bedell. Smith cited the testimony of a witness, Clint Barnett, who claimed that when he saw Bedell leave Kongo's, he noted Bedell smelled of alcohol, had red eyes and slurred speech, and that it was apparent she was visibly intoxicated. Smith claimed whether Bedell was noticeably intoxicated was a disputed question of fact.

¶ 13 Smith next argued that the circumstances supported piercing the corporate veil to hold Teel and Williams liable for injuries caused by Bedell. Smith based this argument on his assertion that Teel lacked credibility because he signed ABLE Commission documents as "manager" of Kongo's, but denied being the manager in this lawsuit.

■ ¶ 14 As noted above, the trial court denied summary judgment as to Kongo's and Smith dismissed without prejudice his claims against Kongo's. The rule in Oklahoma, first announced in *Brigance, supra,* is that "one who sells intoxicating beverages for on the premises consumption has a duty to exercise reasonable care not to sell liquor to a noticeably intoxicated person." 725 P.2d 304 at ¶ 17. Smith has not presented any evidence that Teel or Williams personally sold or served alcohol to Bedell, or had knowledge that any Kongo's employees may have served alcohol to a noticeably intoxicated person;

---

5. A fact is material for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting one of the essential elements of cause of action. *Brown v. Oklahoma State Bank & Trust Co. of Vinita,* 1993 OK 117, 860 P.2d 230.

nor has Smith presented evidence that Teel or Williams was present at Kongo's on the night in question. As a result, regardless of any evidence that Bedell was noticeably intoxicated at Kongo's before she caused Smith's injury, any *Brigance* liability Teel or Williams may have would result from piercing the veil of protection granted to members of a limited liability company.[6] Another division of this court has found that the *Brigance* liability should not extend beyond the corporate veil. *King v. Modern Music, supra.* In *King,* as in this case, there was no evidence the corporate partners sold alcohol to the intoxicated person causing the injury, nor was there evidence the corporate partners knew or should have known the bar staff would have served a noticeably intoxicated person. On the other hand, in *Pate v. Alian, supra,* the record showed that the sole member of the corporation was both present at the restaurant at the time the patron/driver was becoming intoxicated and encouraged the staff to continue serving intoxicated patrons. In *Pate,* the Court of Civil Appeals found the sole corporate owner could be held personally liable.

¶ 15 The reasoning of *King* is persuasive and we find it supports summary judgment in favor of Teel and Williams based on the undisputed material facts presented by the record in this case. AFFIRMED.

HANSEN, P.J., and BELL, J., concur.

---

**6.** The Kongo's Operating Agreement provides, in Article VII, Section 7.1, that members and managers are not liable under judgments, decrees, court orders, or in any other manner, for debts of the company. The Oklahoma Limited Liability Company Act provides that L.L.C.s may limit the liability of their managers. 18 O.S.2001 § 2016.