## JACKSON et al. v. BOWLIN.

No. 15535—Opinion Filed Sept. 15, 1925.

1. **Landlord and Tenant — Contract—Tenant's Right of Possession of Farm Land.**

Where J., the owner or original lessee of lands, puts B. in possession of such lands and a house and barn thereon, and orally agrees to furnish B. with live stock, farming implements, and seed sufficient to cultivate the lands and make a crop, and B. agrees to cultivate the land and raise crops thereon, and pay to, or give, or deliver to, J. one-half of the crops so raised, for the use of the land, the relation of landlord and tenant is established, and B. is entitled to possession of the lands and buildings during the term of his lease, and to possession of the crops until the same are gathered and ready for delivery to J.

2. **Same—Protection of Tenant's Possession by Injunction.**

Where a landlord puts a tenant in possession of lands under an oral agreement for less than one year, providing the tenant will cultivate the land, and raise certain crops, and the tenant with due diligence proceeds to cultivate the land and sow his seed, and thereafter the landlord bars, chains, and locks the entrance to the lands and with force and arms drives the tenant and his hired help from the premises, an action brought by the tenant seeking to restrain and enjoin the landlord from committing such acts is properly cognizable in a court of equity, and where there is evidence introduced reasonably tending to sustain the allegations of a petition alleging these facts, an injunction is properly awarded.

3. **Appeal and Error—Review—Sufficiency of Evidence in Equity Cases.**

In an equity case it is within the power of the Supreme Court to consider the evidence and render judgment thereon, but the rule is well established that the Supreme Court will not interfere with the judgment of the lower court, unless the same is clearly against the weight of the evidence.

4. **Same.**

Record examined, and held, the petition

states an equitable cause of action, and the evidence reasonably tends to sustain the allegations therein, and the injunction was properly awarded.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by L. B. Bowlin against S. B. Jackson et al. Judgment for plaintiff, and defendants appeal. Affirmed.

Sigler & Jackson, for plaintiffs in error.

Mathews & Coakley, for defendant in error.

Opinion by RUTH, C. Plaintiff and defendants will be herein designated as they appeared in the trial court.

Plaintiff alleges I. C. Jackson is the owner and holder of an agricultural lease on certain lands in sec. 21-28, twp. 4 S., R. 2 E., in Carter county, and S. B. Jackson, her husband, is her attorney in fact in full control of the property. That S. B. Jackson, in the presence of I. C. Jackson, and on her behalf, by oral lease, leased to plaintiff 104 acres of said land, for a period beginning January 28, 1924, and ending December 31, 1924. That defendants agreed to furnish "sufficient" mules, harness, tools, and apparatus to farm the 104 acres, and sufficient feed for the mules, and seed to plant 40 acres in cotton, 10 acres in corn, 28 acres in cane, and 20 acres in oats, and furnish the house and barn and six acres of land surrounding the house and barn, and also furnish plaintiff one milk cow. That plaintiff entered into possession of the house, barn, and land, and sowed 20 acres of oats, listed 30 acres of cotton land, broke 18 acres of cane ground, and planted about one acre in garden truck. That on March 25, 1924, defendants locked up the harness furnished plaintiff, put locks and chains on the gates to the fields leased to plaintiff, and forbade him to go on the lands to cultivate same; served notice on him to vacate the premises, and on April 5, 1924, defendants instituted a forcible entry and unlawful detainer action against plaintiff, which action was determined adversely to the defendants in this action.

Plaintiff then alleges defendants took the mules furnished him, and the defendants turned stock loose in the fields leased to plaintiff; shot at plaintiff's son without cause or provocation, and erected "no trespassing" signs on the lands leased to plaintiff, and plaintiff prays an injunction.

Defendants demurred, for that the petition did not state facts sufficient to constitute a

cause of action, and for want of equity. Demurrer was overruled. Defendants' answer admits S. B. Jackson is the owner of a lease on the lands, alleges he is in possession of same, and denies all other allegations. It was stipulated that the evidence introduced at the hearing on the application for a temporary restraining order might be considered as the evidence at the hearing to make the injunction permanent.

Judgment was for plaintiff, and defendants appeal and present their assignments of error under two propositions:

"The court erred in overruling the defendants' demurrer to the plaintiff's petition and erred in overruling defendants' demurrer to the plaintiff's evidence."

Defendants cite 24 Cyc., pp. 1464-1467, 12 Cyc., pp. 980, 8 R. C. L. 373, 374, 17 C. J. 382, Chickasha Gas & Electric Co. v. Linn, 80 Okla. 233, 195 Pac. 769, and First National Bank of Bristow v. Rogers, 24 Okla. 357, 103 Pac. 582, in support of the general rule that one who raises a crop upon the land of another under a contract to raise the crop for a particular part of it, is a mere cropper, and where there is a joint occupation or an occupation which does not exclude the owner from possession, the contract is a mere letting on shares and the relation of landlord and tenant does not exist.

There is a marked contrast between the facts as disclosed by the evidence in the case at bar and the facts in First National Bank of Bristow v. Rogers, supra, and in Chickasha Gas & Electric Co. v. Linn, supra. In the Rogers Case, W. M. Rogers agreed to furnish seed, mules and farming implements to J. C. Rogers with which J. C. Rogers was to cultivate the land and raise a crop. Both parties lived on the lands to be cultivated. W. M. Rogers was to give to J. C. Rogers one-half of the cotton raised on the land for his services in making a crop. W. M. Rogers had mortgaged the crop of cotton to be raised on all this land (describing it) to the bank. W. M. Rogers gave to J. C. Rogers one-half the cotton, and in a replevin action by the bank this court held J. C. Rogers was a cropper, and had a lien on the crop, subject, however, to the prior lien of the bank.

In the instant case, Jackson leased by oral agreement 104 acres of land (describing them) to Bowlin. He gave possession of the lands, and a house and barn thereon, to Bowlin for a period of 11 months and three days, and Bowlin was to pay to Jackson, his landlord, one-half of the crops raised on the land in lieu of cash rent, thereby, by the great preponderance of authorities, establishing the relation of landlord and tenant. All authorities are in concord in holding that under such circumstances the tenant is the owner of, and entitled to possesion of, the premises until the expiration of his lease, and of the crops until the same are harvested, when he must deliver his grain rent to his landlord.

In Chickasha Gas & Electric Co. v. Linn, supra, a condition existed similar to that in Bank v. Rogers, supra. Linn sued the Chickasha Gas & Electric Company for damages by reason of the erection of a dam, causing the water to back up on Linn's land, injuring his crops. The point arose over whether one Bass, who was cultivating the land, was a necessary party to the action. The evidence disclosed the fact that Linn was to furnish Bass with mules, feed, farming implements, etc., and Bass was to cultivate the land, and after the crops were harvested, Linn was to give Bass a portion of the crops raised in payment for his labor in so cultivating the lands and raising the crops, and the court properly held, under the authorities, that Bass was a cropper, and the relation of landlord and tenant was not established, and the action was maintainable by Linn. S. B. Jackson, called as a witness for plaintiff, testified that Bowlin came to him and wanted to make a share crop, and he told Bowlin he would never make a share crop with anyone who could not feed himself, and Bowlin said he could "get by" until summer, and then he would have something to show for his work, and could mortgage it or would have something to borrow money on. That Bowlin went into the house on the premises and planted oats and broke out cotton and cane land. That Jackson permitted Bowlin to move his family into a house on the land, and the statement of Bowlin with reference to mortgaging the crop produces in the mind of the court strong evidence of the fact that Jackson recognized Bowlin as the owner of the crop, and that Bowlin was to pay Jackson, and does not present a case of the landlord paying the cropper, and strongly tends to prove the relation of landlord and tenant. Within 28 days after Bowlin took possession and had worked his land and planted a portion of the crop, Jackson warned Bowlin off of the premises, took the mules and harness, chained and locked the gates, planted a post in the center of the gateway leading from Bowlin's house, and on April 5, 1924, instituted forcible entry and unlawful detainer

proceedings against Bowlin, which cause was decided against Jackson. T. B. McLish testified Jackson told him Bowlin had moved into the house and he had rented Bowlin the land.

Henry Bowlin, 17 year old son of plaintiff, testified that after the suit for forcible entry and unlawful detainer was decided, his father bought or secured mules with which to work the place, and witness hitched up the team and went down to the gate for the purpose of going on the land to work it, and S. B. Jackson, the defendant, fired two shots at him from a 30-30 Winchester and chased him away, and would not permit him to cultivate the land.

Some space in the brief of defendant is devoted to the fact that defendant paid plaintiff and his son for work done as day laborers. The evidence discloses that men working for defendant quit, and the day after plaintiff moved his family into the house and on January 29, 1924, defendant hired plaintiff and his son as day laborers and paid them $1.50 each day they worked. There is nothing unusual in the fact that one farmer will work for a neighbor when he is short of hands, and the evidence of defendant fails to prove the plaintiff in any manner neglected to cultivate the land he leased. The record discloses plaintiff, plaintiff's wife, and two sons worked the land, and during the month of February, and in a period of 28 days of our severest winter months, they had sowed 20 acres of oats, listed 30 acres for cotton, and broke out 18 acres for cane, and the only reason they did not cultivate the land after March 25, 1924 was that defendant chained and locked the gates, took the mules, harness, and farming implements from them, and shot at them when they tried to cultivate the land, and we can fully appreciate the fact that breaking out new land on a winter's day while dodging bullets from a 30-30 Winchester is farming under difficulties.

After a careful review of the whole record we are constrained to hold that where J. enters into an agreement with B. and agrees to furnish B. with certain work stock and farming implements and feed for the stock, and puts B. in possession of the lands, and the house and barn thereon, and B. agrees to cultivate the land and pay to, or give, or deliver, to J. one-half of the crop raised thereon by B., the relation of landlord and tenant is established, and B. is not a cropper as that term is used in law, and where J. institutes suit for possession of the premises before the expiration of the lease or tenancy,

and denies B. ingress, egress, and regress to the lands by locking and chaining the entrances to the lands, such acts on the part of J. constitute such a violation of the vested rights of B. and such an interference with his right to peaceable and quiet enjoyment of the premises as to invoke equity intervention, and will sustain a judgment awarding an injunction against J.

The evidence in this case, fully examined, reasonably tends to prove all the material allegations contained in the plaintiff's petition and the demurrer to the plaintiff's evidence was properly overruled, and finding no error in the judgment of the court, making the temporary injunction permanent, the judgment of the trial court should in all matters be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 17 C. J. p. 382, § 10; 36 C. J. pp. 684, § 1914, 690, § 1927, 700 § 1941. (2) 36 C. J. p. 693, § 1931 (Anno). (3) 4 C. J. pp. 897, § 2867, 900, § 2869. (4) 36 C. J. pp. 693, § 1932, 694, § 1933.