2001 OK CIV APP 126

**Donna and Robert KING,
Plaintiffs/Appellants,**

v.

**MODERN MUSIC CO. and Larry K.
Phillips, Defendants/Appellees.**

No. 95467.

Court of Civil Appeals of Oklahoma,
Division No. 4.

April 3, 2001.

948

W. Brent Willis, Hiltgen & Brewer, P.C., Oklahoma City, OK, for Plaintiffs/Appellants.

Jeff R. Beeler, Beeler, Walsh & Walsh, P.L.L.C., Oklahoma City, OK, for Defendants/Appellees.

David B. Donchin, Hilary S. Allen, Durbin, Larimore & Bialick, Oklahoma City, OK, for Defendants/Appellees.

RAPP, Judge:

¶ 1 The trial court plaintiffs, Donna and Robert King (Kings), appeal the grant of summary judgment to the trial court defendants, Modern Music Co. (Modern) and Larry Keith Phillips (Phillips.)

## BACKGROUND

¶ 2 The Kings had been injured on September 13, 1997, by Timothy Wayne Haley (Haley) in an automobile accident. Kings alleged that Haley became noticeably intoxicated at an establishment owned and operated by F & J Venture, Inc. d/b/a Double Eagle (F & J). They sued and recovered a default judgment against Haley and F & J on November 5, 1999, in Oklahoma County District Court, cause number CJ 98–772. Modern and Phillips were not named as parties to that action.

¶ 3 Kings filed the present action on March 31, 2000, in Oklahoma County, against Modern and Phillips as a new case. Their action evolved into two claims against Modern.[1] First, Kings allege that they may pierce the corporate veil of F & J to determine whether Modern is liable for the default judgment. Second, they claim that Modern is a joint venture or a partnership with F & J. With respect to Phillips, Kings claim that F & J is a sham entity and seek to hold Phillips liable as the party who activated, promoted, and controlled the F & J entity.

¶ 4 Modern is a corporation owned by Phillips. Modern's business, for purposes of this case, consists of leasing property and then subleasing that property to others to operate taverns. In addition, Modern leases to the tavern owners the bar equipment, vending machines, and amusement machines used in the taverns. Here, Modern subleased premises to F & J for operation of a tavern at a rental of $150.00 per week pursuant to a written lease. In addition, Modern had an oral agreement with F & J to provide the vending and amusement machines, pool table, and other bar furniture in consideration of a payment to Modern of approximately 50 percent of the proceeds from the machines. Modern retained ownership of these fixtures and personal property and the bar operator could not substitute or use similar property furnished by another.[2]

¶ 5 The tavern premises involved here came into Modern's possession in 1992 when Modern acquired a business similar to Modern's enterprise. At that time, Phillips contacted a June Allison to arrange a sublease and she in turn took steps to open a tavern business by filing Articles of Incorporation to form a corporation called F & J Venture, Inc. The name was taken from the first names of Ms. Allison and her husband, Frank. However, the proposal between Modern and Allison never consummated and the Allisons took no further action with regard to the F & J corporation.

¶ 6 The record reflects a Certificate of Good Standing for F & J as of September 17, 1997, with Ms. Allison as the registered agent. According to Ms. Allison, the Allisons did not relinquish ownership of F & J nor did they give anyone permission to use the corporation. She further testified that she did not know that she was F & J's registered service agent. She testified that she had received a notice as registered agent from the Oklahoma Tax Commission, which she turned over to Phillips. Phillips, according to her testimony, told her that he would have her removed as service agent. Then she began to receive process papers served in this action, which she also turned to Phillips. Phillips has not refuted Ms. Allison's statements in this record.

¶ 7 Returning to events in 1992, Phillips contacted a Donald Hayes to operate the tavern when the Allisons declined to go forward. Kings claim Hayes forged documents pertaining to F & J and misrepresented facts to the Oklahoma ABLE Commission in order to obtain a liquor license for the tavern. Specifically, Hayes used the name of one Verna Stricklin. However, she testified that she had no relationship with F & J and had not given Hayes permission to use her name. She denied that the signature purporting to be hers on sundry documents was in fact her signature. The documents are not part of the appellate record but were referenced in the Stricklin deposition as having been submitted by someone, with the inference being Hayes, to obtain the liquor license for the tavern. The license was issued and is the

---

1. A pretrial order specified the issues.

2. This relationship is similar to that described in *Jackson v. Bowlin,* 1925 OK 698, 239 P. 637.

license in effect when the accident causing Kings' injuries occurred.

¶ 8 In July 1996, an individual named Canning took over the tavern. It is not clear from the record who operated the tavern in the interim. The record contains a one year sublease agreement dated April 11, 1994, between Modern and F & J, but the signature on behalf of F & J is obscure. Based upon other testimony from Phillips, the signature appears to be that of a person named Jerry Jenkins.

¶ 9 In April 1997, Canning signed a lease agreement extension with Modern in which Phillips signed for Modern and Canning signed for F & J and its d/b/a entity the Double Eagle Club. Canning was not named in the tort action due to his bankruptcy. Canning testified that he obtained the tavern from a person named Bonhomme. Canning testified that he first learned of F & J from the ABLE Commission in regard to the liquor license. He further testified that he had no financial or operational involvement with F & J, other than the fact that the tavern's liquor license was held by F & J. He acknowledged execution of corporate minutes, but then claimed that they were just handed to him to sign.[3]

¶ 10 Phillips testified that he had no control over or involvement with F & J or the operation of the tavern other than as represented by the premises lease and the oral lease of the personal property. He specifically denied, without contradiction, that neither he nor Modern shared in any of the receipts from sale of beer or alcoholic beverages.

¶ 11 The trial sustained Modern and Phillips' motion for summary judgment. Kings appeal.

### STANDARD OF REVIEW

 ¶ 12 The appellate standard of review in summary judgment is de novo. *Kirkpatrick v. Chrysler Corp.*, 1996 OK 136,

¶ 2, 920 P.2d 122, 124. This means without deference. *Hulett v. First Nat. Bank & Trust Co. in Clinton*, 1998 OK 21, 956 P.2d 879; see *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). The pleadings and evidentiary materials will be examined to determine what facts are material and whether there is a substantial controversy as to one material fact. *Sperling v. Marler*, 1998 OK 81, 963 P.2d 577; *Malson v. Palmer Broadcasting Group*, 1997 OK 42, 936 P.2d 940. All inferences and conclusions to be drawn from the materials must be viewed in a light most favorable to the non-moving party. *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051. Even though the facts may not be controverted, if reasonable persons may draw different conclusions from these facts, summary judgment must be denied. *Bird v. Coleman*, 1997 OK 44, 939 P.2d 1123. Summary judgment is proper only if the record reveals uncontroverted material facts failing to support any legitimate inference in favor of the nonmoving party. *N.C. Corff Partnership, Ltd. v. OXY USA, Inc.*, 1996 OK CIV APP 92, 929 P.2d 288. When genuine issues of material fact exist, summary judgment should be denied and the question becomes one for determination by the trier of fact. *Brown v. Oklahoma State Bank & Trust Co. of Vinita*, 1993 OK 117, 860 P.2d 230; *Flowers v. Stanley*, 1957 OK 237, 316 P.2d 840. Because the trial court has the limited role of determining whether there are any such issues of fact, it may not determine fact issues on a motion for summary judgment nor may it weigh the evidence. *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

 ¶ 13 One who defends against a claim and who does not bear the burden of proof is not required to negate the plaintiff's claims or theories in order to prevail on motion for summary judgment. When, as here, a defendant moves for summary judgment without relying upon an affirmative defense the defendant must show: 1) that no

---

3. Modern and Phillips also filed a Reply to the response to the summary judgment elaborating on Canning's involvement with F & J by adding a stock certificate purportedly signed by him and issuing 150 shares of F & J in his name. Rule 13 of the District Court Rules does not permit a reply. The grounds for summary judgment must be established with the motion, not what could have been filed. Thus, the reply is disregarded.

substantial factual controversy exists as to at least one fact essential to plaintiff's theory of the cause of action; and, 2) that the fact is in defendant's favor. Once a defendant has introduced evidentiary materials to establish these points, the plaintiff then has the burden of showing that evidence is available which justifies a trial of the issue. *Akin v. Missouri Pacific R.R. Co.*, 1998 OK 102, ¶ 8, 977 P.2d 1040, 1044; *Stephens v. Yamaha Motor Co., Ltd. Japan*, 1981 OK 42, ¶ 11, 627 P.2d 439, 441; *Runyon v. Reid*, 1973 OK 25, ¶¶ 12–13, 510 P.2d 943, 946.

## ANALYSIS AND REVIEW

¶ 14 The gist of Kings' case consists of their contention that Phillips, for himself and on behalf of Modern, took over F & J and used it essentially as a front for his operation of a tavern after the Allisons declined to go forward with the operation of the tavern. In effect, Kings assert that Phillips simply "plugs in" whoever may be the current individuals running the tavern.

¶ 15 The theory relied upon by Kings as to Modern and Phillips is that the court may disregard the corporate entity of F & J and find that Modern and Phillips constitute F & J, and are therefore liable. In addition, as to Modern, Kings maintain that Modern and F & J were engaged in an unincorporated joint enterprise, the operation of the tavern under the name "Double Eagle." The summary judgment proceeding was presented on those legal theories and the trial court's judgment, although not containing specific findings, necessarily found that at least one element of each of these theories could not be sustained by Kings.[4]

### Disregard of Corporate Entity

¶ 16 It is the general rule that a corporation is an entity separate and apart from the persons composing it, but the rule has its limitations. Both law and equity disregard the distinct existence and treat them as identical when necessary to circumvent fraud, protect the rights of third persons, and accomplish justice. *Mid–Continent Life*

*Ins. Co. v. Goforth*, 1943 OK 244, 143 P.2d 154. In order to disregard the corporate entity, Kings must show either (1) that the separate corporate existence is a design or scheme to perpetuate fraud, or (2) that one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation. In other words, it must appear that one corporation is merely a dummy or sham. In such cases, the distinct corporate entity will be disregarded and the two corporations will be treated as one. *Wallace v. Tulsa Yellow Cab Taxi & Baggage Co.*, 1936 OK 665, 61 P.2d 645.

Oklahoma permits the court to disregard the corporate entity if used, (1) to defeat public convenience, (2) justify wrong, (3) to perpetrate fraud whether actual or implied, or (4) to defend crime.... If the legal entity is used to accomplish these purposes, the law may treat the corporation as an association of persons. The goal in piercing the corporate veil is to impute liability for the acts of the corporation to the responsible persons.

*In re Estate of Rahill*, 1991 OK CIV APP 83, ¶ 8, 827 P.2d 896, 897.

¶ 17 In addition, the corporate shield may be disregarded when it is essential in the interest of justice to do so, or where the corporate shield is used to defeat an overriding public policy. *Thomas v. Vertigo, Inc.*, 1995 OK CIV APP 45, ¶ 6, 900 P.2d 458, 460; accord *Sproles v. Gulfcor, Inc.*, 1999 OK CIV APP 81, 987 P.2d 454.

¶ 18 The record here for purposes of summary judgment review, reflects that the F & J entity was a corporation in good standing as of the relevant time when Kings were injured. In addition, Phillips testified that he had no involvement with F & J, either personally or via Modern, other than the business dealings reflected by the leases of premises and personal property for operation of the tavern. Thus, upon being required to defend the summary judgment, it then became incumbent upon Kings to show that

---

4. Other issues, such as whether Kings' claims are barred by the Statute of Limitations, were presented separately and denied by the trial court. Those issues have not been presented in this appeal so this review is confined to an examination of whether summary judgment was proper.

controversy exists as to material facts relevant to at least one of the exceptions to the rule affording a corporate shield to liability.

¶ 19 At this juncture, it is noteworthy that Kings have not asserted that the Modern corporate shield should be disregarded. This means that Phillips' responsibility for Kings' damages must rest upon grounds independent of any basis for affixing that same responsibility upon Modern.

¶ 20 Kings have shown that F & J is a common denominator throughout the history of the Double Eagle tavern. Although Allison, the organizer of F & J, did not go forward with the tavern enterprise, somehow the business relationships with all subsequent tavern operators involved F & J. However, neither Modern nor Phillips have been shown to own stock in the F & J corporation and Phillips has not served in any official capacity in the F & J corporation.

¶ 21 On the other hand, when Allison learned that she was the registered agent she contacted Phillips. Phillips told her that he would take care of removing her as registered agent. Apparently he did not do so; yet when she received process in this matter, she again turned the papers over to Phillips.

¶ 22 Kings have also shown that Phillips' business, conducted through Modern, consists of providing the premises and all of the personal property and vending equipment necessary to operate a tavern in exchange for rent and a percentage of the vending machines proceeds. In addition, for purposes of summary judgment, Kings have shown that the tavern operators receive, as a part of the package, F & J corporation, which is the entity that holds the tavern's alcoholic beverage license.

■ ¶ 23 Kings have, in essence, shown that the tavern's various operators are the equivalent of tenant farmers, but, instead of being tenant farmers, they are tavern operators. The relationship would then be that of landlord and tenant, with Modern as landlord and the successive operators as tenants.

[W]here J. enters into an agreement with B. and agrees to furnish B with certain work stock and farming implements and feed for the stock, and puts B. in possession of the lands, and the house and barn thereof, and B. agrees to cultivate the land and pay to, or give or deliver to J. one-half of the crop raised thereon by B., the relation of landlord and tenant is established.

*Jackson v. Bowlin*, 1925 OK 698, 239 P. 637, 639.

■ ¶ 24 While there may be a temptation to view such relationship askance, the landlord-tenant relationship does not create a condition for disregard of the corporate shield. Thus, the issue here resolves itself into the question of whether the court should disregard the F & J corporate structure because F & J appears, for purposes of summary judgment review, to be one of the "things" supplied by Phillips for the Double Eagle tavern operations, with Modern as the provider of the premises and equipment. Standing alone, the fact that F & J might actually belong to Phillips and be used by him in such manner would not suffice under the foregoing authorities. Kings must still bring their case within the ambit of one of the four instances listed in cases such as *In re Estate of Rahill* or demonstrate that an overriding public policy requires that the corporate shield be disregarded. Of the four instances listed in *In re Estate of Rahill*, the only ones meriting consideration are whether the corporation, F & J, has been used to perpetrate fraud or to justify wrong.

¶ 25 With respect to the former, Kings' problem is that they had no dealings with the F & J corporation such that they were victims of some fraudulent scheme. An intoxicated patron of the tavern injured the Kings. Kings' summary judgment materials do not establish any elements of a fraud directed to them and causing them injury. They have not, by way of example, shown reliance upon any material representation or misrepresentation shown to be false. See *Kilpatrick Bros., Inc. v. Poynter*, 205 Kan. 787, 473 P.2d 33 (1970), where the Court stated the rule that the corporate entity may be disregarded when a person uses a corporation as an instrumentality to perpetrate a fraud upon persons dealing with the corporation.

¶ 26 This leaves the next question of whether a "wrong" has occurred due to the

"fact," for summary judgment purposes, that Phillips has supplied a corporation to the tavern operator, coupled with Modern's provision of premises and equipment. Under the circumstances here, the "wrong" and overriding public policy as the grounds to disregard the corporate shield unite as one because the ultimate question is whether Phillips and Modern are wrongfully evading responsibility imposed under *Brigance v. Velvet Dove Restaurant, Inc.*, 1986 OK 41, 725 P.2d 300.

¶ 27 In *Brigance*, the Court imposed liability on commercial vendors who served intoxicating beverages to a noticeably intoxicated person for on premises consumption who in turn caused injury to another due to intoxication. The Court did so on public policy grounds.[5]

> We hold today that public policy is better served by holding that the common law principles of negligence are applicable where a commercial vendor for on the premises consumption is shown to have sold or furnished intoxicating beverages to a person who was noticeably intoxicated from which a jury could determine that such conduct creates an unreasonable risk of harm to others who may be injured by the person's impaired ability to operate a motor vehicle. Based upon compelling reasons we, thus, reject the common law doctrine of tavern owner nonliability in Oklahoma.

*Brigance v. Velvet Dove Restaurant, Inc.*, 1986 OK 41 at ¶ 24, 725 P.2d at 306–07.

¶ 28 Here, all of the evidence elicited by either side established that neither Phillips nor Modern directly operated the tavern. Neither Phillips nor Modern supplied beer or alcoholic beverages to operators or to patrons of the tavern, including the individual that injured Kings. Likewise, they did not receive any proceeds directly from the sale of the items. The tavern operators paid Modern only rent—from the premises and from vending machines in the form of a portion of proceeds.

¶ 29 The real import of Kings' argument here is that the public policy underpinning set forth in *Brigance* suffices as a basis to ignore the corporate shield. In other words, Kings would extend *Brigance* to hold a party to a business relationship liable, under the facts here, notwithstanding the corporate existence. This Court cannot and will not so hold.

¶ 30 Oklahoma appellate courts have extended *Brigance* only in carefully defined circumstances. For example, sales to a minor for off premises consumption in which the minor used the beverage, became intoxicated, and caused injury fell under *Brigance*. *Tomlinson v. Love's Country Stores*, 1993 OK 83, 854 P.2d 910. On the other hand, when the minor purchased the beverage but gave it to a third person who caused the injury, the Court did not extent the rule. *Sanders v. Crosstown Market, Inc.*, 1993 OK 25, 850 P.2d 1061; see also *Ohio Cas. Ins. Co. v. Todd*, 1991 OK 54, 813 P.2d 508, in which the Court declined to extend liability to a self-intoxicated driver; and, *Troxell v. Bingham*, 1989 OK CIV APP 27, 774 P.2d 1073, where the Court declined to extend *Brigance* to social providers.

¶ 31 The *Brigance* standards for imposition of liability focus on the tavern-keeper/vendor's objective observations and perceptions of a patron's state of intoxication. *Frank By and Through Gray v. Merciez*, 1991 OK CIV APP 14, 806 P.2d 1147. The *Brigance* court dealt with liability of a commercial vendor only, and specifically held that even if a breach of duty is found, a plaintiff must still show the furnishing of alcohol was the proximate cause of the injuries. *Brigance*, 1986 OK 41 at ¶ 21, 725 P.2d at 305.

¶ 32 Thus, the responsibility that *Brigance* imposes is a responsibility not to sell more intoxicating beverage to a noticeably intoxicated person. Here, Kings do not maintain that Phillips, or Modern, sold the intoxicating beverages to the party causing them injury, and, as stated before, all evidence is to the contrary. Moreover, Kings have not shown

---

5. Here, Kings have not demonstrated in their summary judgment materials that the intoxicated party who injured them was a minor. Thus, any incremental public policy considerations flowing from minority status do not have a role here. See *Tomlinson v. Love's Country Stores, Inc.*, 1993 OK 83, 854 P.2d 910.

that Phillips or Modern knew or should have known that the tavern operator would do so. *Compare Sanders v. Crosstown Market, Inc.,* 1993 OK 25, 850 P.2d 1061, where the Court exonerated a vendor that sold beer to a minor who in turn supplied the beer to another minor who became intoxicated and caused an injury.

¶ 33 The *Brigance* court announced a judicially crafted rule of liability based upon public policy. The use of the *Brigance* doctrine to pierce the corporate veil constitutes an extension of that doctrine when extension has been rejected in cases, like *Sanders,* where a clearer reason to affix responsibility to a particular party exists.

¶ 34 Moreover, in cases such as *Thomas v. Vertigo, Inc.,* 1995 OK CIV APP 45, 900 P.2d 458, the Court there determined that the corporate shield was employed to circumvent a statutory duty to maintain workers' compensation. Here, Kings have not shown that any facts exist from which it even may be inferred that Phillips or Modern have used F & J to circumvent a statutory duty imposed upon either of them.

¶ 35 Therefore, under the facts of this case and the applicable standard of review, the trial court correctly ruled that Kings had not established grounds to disregard the corporate shield.

### Joint Venture/Partnership/Unincorporated Association

¶ 36 As stated above, the relationship between Modern and F & J has the attributes of a landlord-tenant relationship. Phillips and the current tavern operator each denied that the operation was a joint enterprise, although it was not disputed that the financial success of the tavern inured to the benefit of Modern.

¶ 37 For purposes of summary judgment review, Modern had the obligation to demonstrate that some part or all of Kings' action on this theory could not be sustained. The materials submitted show a landlord-tenant relationship. As a general rule a landlord is not responsible for the torts of a tenant simply by virtue of the landlord status, as distinguished from a master-servant, principle-agent situation. *Borders v. Roseberry,* 216 Kan. 486, 532 P.2d 1366 (Kan. 1975); *Wells v. Whitaker,* 207 Va. 616, 151 S.E.2d 422 (1966).

¶ 38 Therefore, Kings had an obligation to bring forth some materials either disputing the landlord-tenant relationship or showing that facts exist so that an exception to the general rule regarding landlord liability applies here. Kings elected to try the former course of action. As the issues were framed on summary judgment, Kings' assertion of Modern's liability, if any, rested on Modern being a joint venturer, partner, or in an unincorporated association with F & J.

¶ 39 The Oklahoma Supreme Court has given the requirements for a joint venture.

A joint venture is generally a relationship analogous to, but not identical with, a partnership, and is often defined as an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit. The essential criteria for ascertaining the existence of a joint venture relationship are: (1) joint interest in property, (2) an express or implied agreement to share profits and losses of the venture and (3) action or conduct showing cooperation in the project. None of these elements alone is sufficient. The contributions of the respective parties need not be equal or of the same character, but there must be some contribution by each co-adventurer of something promotive of the enterprise. Each member of a joint venture acts for himself as principal and as agent for the other members within the general scope of the enterprise. The law of partnership and of principal and agent underlies the conduct of a co-adventurer and governs the rights and liabilities of co-adventurers and third parties as well. The law requires little formality in the creation of a joint venture and the agreement is not invalid because it may be indefinite with respect to its details.

The essential test in determining the existence of a joint venture is whether the parties intended to establish such a relation. In the absence of an express agreement setting forth the relationship, the

status may be inferred from the conduct of the parties in relation to themselves and to third parties. As to third parties, it is the legal and not the actual intent which controls. The parties may be estopped in favor of third persons from denying that they are joint venturers, even though they never intended to become such. As to third parties, it is the intent to do those things which constitutes a joint venture that usually determines whether the relation exists.

In placing the conduct of these parties in the framework of a joint venture, no one factor is determinative; the facts must be examined as a whole.

*Martin v. Chapel, Wilkinson, Riggs, and Abney,* 1981 OK 134, ¶¶ 11–13, 637 P.2d 81, 85.

¶ 40 Here, the submitted materials fail to establish that Phillips and Modern and the tavern operators, operating under the F & J corporation, intended to conduct their affairs as a joint venture. Kings' failure in this regard extends not only to the specific intent but also to the outward manifestations of conduct. Thus, there exists no basis to infer joint venture or to estop the parties from claiming joint venture.

¶ 41 The statutes provide rules for determining whether a partnership has been formed. 54 O.S. Supp.2000, 1–202 (c). Again, Kings have failed to overcome Modern's showing that no controversy exists as to at least one material fact in Modern's favor. For example, Modern does receive a share of proceeds from vending machine operations but, without dispute, such receipt is for rental from equipment usage. That arrangement takes fact of sharing of proceeds out of the presumptive partnership category. 54 O.S. Supp.2000, 1–202 (c)(3)(iii). Moreover, as with the joint venture case, Kings have not shown a dispute of fact regarding intent to form a partnership.

¶ 42 All of the facts upon which Kings rely, whether controverted or otherwise, lead to the conclusion that a landlord-tenant relationship exists. Kings also point to paragraph 7 of the sublease agreement as evi-

dence that the parties are engaged in a joint venture or partnership. However, that paragraph provides only that the lessee is bound exclusively to use Modern's vending equipment. Kings do not explain why this provision creates a partnership or joint venture.

¶ 43 In summary, Kings have failed to overcome Modern's showing that no controversy exists about whether a landlord and tenant relationship exists between it and F & J. Even though, for summary judgment review purposes, it may be inferred that Phillips supplied F & J as part of the package, nevertheless the relationship between Modern and F & J has not been shown to be other than that of landlord and tenant.

Alternative Basis for Claim

¶ 44 The Supreme Court's pronouncements upon the standards of review for summary judgments provide a clear message that a party moving for summary judgment carries a heavy burden to justify granting the motion. In addition, the Court has instructed that the Pleading Code does not require detail but rather a "short and plain statement of the claim." 12 O.S.1991, 2008 (A); *Niemeyer v. U.S. Fidelity & Guar. Co.,* 1990 OK 32, ¶¶ 5–6, 789 P.2d 1318, 1320–21. Taken together, this means that if the summary judgment addresses only some of the possible claims that King may have pled, then the case should not be dismissed and the order merely disposes of some but not all of the stated claims.

¶ 45 However, a pretrial order was entered here which established Kings' twofold contentions, i.e., that the corporate veil of F & J may be pierced to reach either Modern or Phillips and that Modern and F & J are partners or co-venturers. The pretrial order supercedes the pleadings and governs the trial of the case. Rule 5(I), Rules For District Courts, 12 O.S. Supp.2000, c. 2, app. 1. Therefore, any alternative basis for recovery under the facts alleged in the petition may not be considered. Moreover, it appears clear that the Statute of Limitations has expired for a direct action against Modern by Kings.[6] Hence, summary judgment was properly considered and granted.

6. This Court, while recognizing that this footnote is *dicta* has nonetheless looked at, but specifically

## CONCLUSION

¶ 46 Phillips' and Modern's summary judgment submissions established that the relationship with F & J and Modern was that of landlord and tenant and not as partner or joint venturer. In addition, that relationship, without more, would not justify disregarding the corporate shield. Kings' submittals failed to establish any factual controversy that would dispute the landlord and tenant relationship or justify proceeding under a theory whereby the F & J corporate shield could be disregarded. The decision granting summary judgment is affirmed.

¶ 47 AFFIRMED.

¶ 48 TAYLOR, J., concurs, and STUBBLEFIELD, P.J., dissents.

STUBBLEFIELD, P.J., dissenting

¶ 1 I respectfully dissent. I believe reasonable inferences from the evidentiary materials in the record support the conclusion that Larry K. Phillips, individually, and perhaps acting in his capacity as officer of Modern Music Company, was using the corporate entity, F & J Venture, Inc., as a shell by which he could ensconce a series of lessees as operators of the establishment which, at one time, was known as the Double Eagle Club. The evidentiary materials support the conclusion that Phillips negotiated with June Allison to become the lessee/operator, and that she took initial action to create F & J. Her testimony was that she never "activated" the corporation, and that Phillips must have been the person that did finalize creation of the corporate entity without her knowledge.

¶ 2 I believe this case cannot be addressed merely as one involving dram shop liability. Plaintiffs have a judgment against F & J Venture, Inc. and, thus, that entity's liability for Plaintiffs' damages has been determined. This action was brought to pierce the corporate veil and assign liability to Phillips. Although Phillips was not a named owner or officer of F & J, the evidentiary materials indicate that he may have used the corporation shell for his own purposes. While the general rule is that a corporation is a separate legal entity, that legal fiction may be disregarded if the corporate existence is a fraud or scheme used as an instrumentality or adjunct of another. *Oklahoma Oil & Gas Exploration Drilling Program 1983–A v. W.M.A. Corp.*, 1994 OK CIV APP 11, ¶ 8, 877 P.2d 605, 609. The evidentiary materials support the conclusion that the corporation, F & J Venture, Inc., was such an instrumentality of Phillips. I believe that fact, if established at trial, would support assignment of liability to Phillips, and possibly to Modern, for the judgment rendered against F & J. I would reverse and remand.

does not address, the following question:

> Whether the landlord of a tavern operator owes a duty under the *Brigance* rule to a party in the zone of risk caused by an intoxicated person imbibing at the tavern.

This Court notes the decision in *Delbrel v. Doenges Bros. Ford, Inc.*, 1996 OK 36, 913 P.2d 1318, where Doenges negligently repaired a vehicle, which became inoperable and had to be pushed. The party who pushed the vehicle was injured and sued. The Supreme Court extended the zone of risk, and thus legal duty, to a cover the person injured even though he was a stranger to the repair contract. Thus, given the public policy underpinnings for *Brigance*, coupled with the extension in *Delbrel* of the zone of risk covered by a legal duty, the issue of a landlord's duty could arise in a proper case.

If—and this Court emphasizes IF—such a duty exists, the question of what may be required in order to consider whether the landlord breached that duty would follow. In such cases the nature of the landlord's control and involvement in the business would become relevant. For example *see Strunk v. Zoltanski*, 62 N.Y.2d 572, 479 N.Y.S.2d 175, 468 N.E.2d 13 (1984), where the landlord had prior knowledge of the tenant's acts which exposed others to harm, and, *Blue Grass Restaurant Co. v. Franklin*, 424 S.W.2d 594 (Ky. 1968), holding a landlord responsible who authorizes or permits act by tenant which landlord should prohibit, and a third party is injured thereby, and, *Green v. Asher Coal Min. Co.*, 377 S.W.2d 68 (Ky.1964), ruling that a landlord would be responsible if tenant operations conducted under the lease result in injury that may be reasonably anticipated.