OSCN Found Document:STEPHENS v. MIKE'S TRANSPORT

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 STEPHENS v. MIKE'S TRANSPORT
2023 OK CIV APP 26
Case Number: 120922
Decided: 07/12/2023
Mandate Issued: 08/10/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2023 OK CIV APP 26, __ P.3d __

 

JULIE STEPHENS, f/k/a JULIE WEBB, Plaintiff/Appellee,
v.
MIKE'S TRANSPORT, INC., and PAMELA BEARD, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
CLEVELAND COUNTY, OKLAHOMA

HONORABLE MICHAEL TUPPER, TRIAL JUDGE

AFFIRMED

Ryan S. Wilson, WILSON LAW FIRM, Oklahoma City, Oklahoma, for Plaintiff/Appellee

Eugene Bertman, TTSB LAW, Norman, Oklahoma, for Defendants/Appellants

STACIE L. HIXON, JUDGE:

¶1 Mike's Transport, Inc. (MTI) appeals summary judgment granted to Julie Stephens (Stephens), determining that a judgment against non-party L&S Trucking, Inc. (L&S) and its owner, Mike Ledford (Ledford), may be enforced against MTI under an alter ego theory of liability. [1] Stephens asserted MTI was formed for the purpose of avoiding the previous judgment against L&S and Ledford. She presented undisputed evidence that MTI continued to serve L&S customers with L&S's truck and trailers under L&S's United Stated Department of Transportation (DOT) and motor carrier numbers and that MTI represented to L&S's customers that it had merely undergone a name change. MTI asserts the trial court applied the wrong standard for imposing alter ego liability, that there was no evidence MTI was the alter ego of L&S, and/or that a dispute of fact remained on this issue. On review of the record and applicable law, we affirm the trial court's judgment against MTI entered August 31, 2021.[2]

INTRODUCTION

¶2 On March 29, 2019, Stephens obtained a judgment of $96,000 against L&S and its owner, Ledford, on her claim for actual fraud in Case No. CJ-2017-3372 (Okla. Co.). In May 2019, L&S stopped operating. MTI was promptly formed by Ledford's sister Beard as owner and president with Ledford serving as Chief Executive Officer (CEO).

¶3 Thereafter, Stephens filed this action against MTI and Beard, alleging that they created MTI to shield assets and avoid paying the 2019 judgment. Stephens alleged that only $5,480.00 of the judgment had ever been collected. She sought a determination that MTI is the alter ego of L&S and Ledford and was liable for the judgment they owe to Stephens; that MTI was a recipient of fraudulent transfers from L&S and Ledford; and that Beard was a co-conspirator of Ledford and is likewise liable for unpaid portions of the judgment.

¶4 Stephens moved for summary judgment on each of her claims. She presented evidence of L&S's cessation and MTI's immediate formation. Among other things, Stephens offered evidence that MTI represented to L&S's customers that it had merely undergone a name change and continued to operate under L&S's DOT and motor carrier numbers, doing business with L&S's former customers using L&S's truck and the trailers it had leased. In response, MTI did not dispute the timing of its formation, its use of L&S's equipment, or that it had represented to L&S customers that it had merely changed its name. It did not successfully dispute with evidence a number of other facts, although it denied the evidence of record could be characterized to show MTI took over L&S's business, or is an instrumentality of L&S.

¶5 Following briefing and a hearing not of record, the trial court granted summary judgment, finding that MTI is the alter ego of L&S and "is so organized and controlled and its affair[s] so conducted that it is the mere instrumentality or adjunct of L&S," and is liable for the judgment in CJ-2017-3372. The trial court found its determination rendered Stephens' claims for fraudulent transfer moot but found a dispute of fact precluded summary judgment against Beard, entering judgment against MTI. MTI appealed after Stephens dismissed her claim against Beard on December 2, 2022.

STANDARD OF REVIEW

¶6 "Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e., whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions." Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1052. "Therefore, as the decision involves purely legal determinations the appellate standard of review of a trial court's grant of summary judgment is de novo." Id. The Court will "examine the pleadings and evidentiary materials to determine what facts are material to plaintiff's cause of action, and to determine whether the evidentiary materials introduced indicate whether there is a substantial controversy as to one material fact and that this fact is in the movant's favor." Ross by and through Ross v. City of Shawnee, 1984 OK 43, ¶ 7, 683 P.2d 535. All inferences and conclusions to be drawn therefrom are viewed in the light most favorable to the nonmoving party. Id.

ANALYSIS

¶7 The trial court determined that MTI was the mere instrumentality and alter ego of L&S and should be responsible for the judgment against it. MTI proposes that the trial court applied the wrong standard to determine alter ego liability, that there was no evidence presented to support the court's judgment, that disputed facts remained on that issue, and that the trial court failed to take disputed facts in favor of MTI.

¶8 "When remedies in aid of execution appear inadequate, a prior judgment may be enforced in a new action founded upon it." Mayhue v. Mayhue, 1985 OK 68, ¶ 3 n.3, 706 P.2d 890. Stephens brought this action in part to enforce a judgment that MTI does not dispute she has been unable to collect from L&S and Ledford by arguing that the previous judgment ought to be enforceable against MTI. The crux of Stephens' alter ego theory was that Ledford and Beard formed MTI to take over L&S's business and assets and operate under the name of MTI to avoid judgment. The trial court determined that MTI was "so organized and controlled and its affair[s] so conducted that it is the mere instrumentality or adjunct of L&S."

¶9 Though MTI contests its liability, it offered the following insights and admissions in its briefing on summary judgment:

This lawsuit arises because Stephens has had a difficult time in collecting her judgment from L&S and Ledford. Ledford is a truck driver by profession. L&S was in the trucking business until its owner and the operator of its only truck quit. Ledford was that truck driver. L&S's only source of income came from Ledford's services as a truck driver. . . .

Stephens is upset because Ledford decided to go into business with his sister, Beard, to continue to drive a truck to earn a living.

****

Although not entirely clear why Ledford shutdown L&S, as the collection issues would be the same, he entered into an agreement with his sister, Beard, to open a trucking business, Mike's Trucking [MTI]. As with most personal services, businesses develop relationships with the professional, not necessarily the business name. Thus, there are several businesses that used to work with L&S that now work with Mike's Trucking. Of the 36 businesses that worked with L&S, 7 have continued on with Mike's Trucking.

MTI further explained,

. . . L&S lost its economic driver--Ledford. Beard opened a trucking company with Ledford to help her brother--there is nothing nefarious about that.

***

. . . it is not improper for Ledford to set up a new company to avoid the liability associated with L&S. That is a legal purpose--one that Stephens does not like, but that is the law. . . . L&S is under no obligation to continue to be in the trucking business to satisfy Stephens' debt.

(emphasis added). Regardless of the admission that L&S was shut down and MTI began to avoid L&S's debt, MTI contends the trial court erred by granting summary judgment because MTI and L&S are entirely separate entities and there is no evidence L&S controls MTI. We disagree.

¶10 "Corporations are distinct legal entities, and generally one corporation will not be held responsible for the acts of another." Gilbert v. Sec. Fin. Corp. of Oklahoma, 2006 OK 58, ¶ 22, 152 P.3d 165 (abrogated on other grounds, Montgomery v. Airbus Helicopters, Inc., 2018 OK 17, 414 P.3d 824). However, one corporation may be held liable for the acts of another under the theory of alter ego liability if (1) the separate existence is a design or scheme to perpetrate a fraud, or (2) one corporation is merely an instrumentality or agent of the other. Id. at ¶ 22. "In other words, it must appear that one corporation is merely a dummy or a sham." King v. Modern Music Co., 2001 OK CIV APP 126, ¶ 16, 33 P.3d 947. See also Matter of Est. of Rahill, 1991 OK CIV APP 83, ¶ 7, 827 P.2d 896 ("Oklahoma permits the court to disregard the corporate entity if used, (1) to defeat public convenience, (2) justify wrong, (3) to perpetrate fraud whether actual or implied, or (4) to defend crime.").

¶11 Much of Oklahoma case law on alter ego or veil piercing discusses liability as the instrumentality or agent of another, rather than upon a design or scheme to perpetrate a fraud.[3] Those cases recognize that the factors relevant to an instrumentality determination hinge primarily on control. Gilbert, 2006 OK 58, at ¶ 23. That analysis includes:

(1) whether the dominant corporation owns or subscribes to all the subservient corporation's stock, (2) whether the dominant and subservient corporations have common directors and officers,
(3) whether the dominant corporation provides financing to the subservient corporation, (4) whether the subservient corporation is grossly undercapitalized, (5) whether the dominant corporation pays the salaries, expenses or losses of the subservient corporation,
(6) whether most of the subservient corporation's business is with the dominant corporation or the subservient corporation's assets were conveyed from the dominant corporation, (7) whether the dominant corporation refers to the subservient corporation as a division or department, (8) whether the subservient corporation's officers or directors follow the dominant corporation's directions, and (9) whether the corporations observe the legal formalities for keeping entities separate.

Id.

¶12 This case is not a typical veil-piercing analysis. The facts in this case do not simply suggest that L&S controls MTI, but that L&S actually is MTI, organized under a new name. MTI did not successfully dispute on summary judgment that it represented to L&S customers that MTI was merely a name change, that MTI operates under L&S's existing DOT and motor carrier numbers, and services L&S customers with L&S's truck.

¶13 Coupled with MTI's admissions noted above that Ledford shut down L&S and created MTI to avoid L&S's liability, these facts appear to lend themselves to an alter ego analysis based on a design or scheme to perpetrate a fraud by reforming or reorganizing under a new name to avoid L&S's creditors.[4] However, the trial court considered and applied the more common alter ego or veil-piercing analysis, based on whether MTI was merely an instrumentality or agent of another. The trial court's determination that MTI is merely an instrumentality or agent of L&S on this basis is nevertheless supported by undisputed material facts of record.

¶14 MTI did not dispute the outstanding judgment against L&S filed March 26, 2019. MTI did not successfully dispute that L&S authorized articles of dissolution on May 1, 2019, or that MTI was formed on May 2, 2019, though the articles were not signed by Ledford until June 2019.[5] Further, Ledford's testimony attached in the summary judgment briefing confirmed L&S ceased operating May 1, 2019. MTI did not dispute that MTI then "hired" Ledford to assist Beard with MTI.[6]

¶15 Stephens also presented evidence that Ledford and Beard wrote to L&S's existing customers on MTI letterhead stating:

Our company has recently changed our name from L&S Trucking, Inc. to Mike's Transport Inc. All invoices will now reflect this information. . . . Our new tax identification number is [redacted]. All checks will need to be made out to Mike's Transport moving forward.[7]

MTI did not dispute Beard and Ledford made these statements. However, it attempted to dispute the import of this representation by claiming that some companies required new contracts after this communication. It reasoned, therefore, that the only conclusion and inference the trial court could make was that MTI was a new and different business. Even if MTI had supported this assertion with evidence,[8] the trial court is only required to make reasonable inferences from the evidence presented. Nothing about the fact that customers required new contracts after MTI announced L&S's name change gives rise to an inference that they are separate companies.

¶16 Stephens also proposed as undisputed facts that MTI uses L&S's DOT and motor carrier numbers and presented a policy statement from the Federal Motor Carrier Safety Administration (FMCSA) website which she contended means that MTI would be permitted to use L&S's DOT number only in the case of a name change. The statement advised that "the FMCSA's policy is to assign a unique USDOT identification number to each person [or corporation] required to identify themselves,"[9] with the exception of when there is a change in demographic information, but the corporation will continue operations as the same legal person/entity, or when a sole proprietor changes the form of business but the new entity will operate "virtually" the same, with no change in company officials, address, or other demographic information and when the new entity "will maintain identical operations, employees and assets," though permitting a change in Tax ID number based on new articles of incorporation.

¶17 MTI responded that the FMCSA statement was a legal conclusion to which no response was required. It did not successfully dispute that MTI continued to operate under L&S's DOT and MC numbers, which was supported by evidence in the record. MTI simply contended that current FMCSA records indicate the number (formerly used by L&S) is registered to MTI. In short, MTI failed to dispute that MTI and L&S use the same numbers or to address FMCSA's apparent policy that they would use L&S's numbers only if they were virtually the same entity, or have simply changed its name or corporate form.

¶18 Though MTI disputed that it served all of MTI's former customers, it did acknowledge it serves seven of L&S's former customers. MTI asserted that some required it to enter into new contracts, though this fact does not dispute the inference that L&S merely changed its name to MTI and continued to operate serving L&S customers.[10]

¶19 Stephens also proposed as undisputed fact that MTI operates out of Ledford's home address on 11817 Copper Trails Lane. MTI disputed that fact. There is nothing of record indicating that this address is necessarily Ledford's home address, as contended. However, documents attached to Plaintiffs' Motion for Summary Judgment and MTI's response show that MTI uses two addresses--an apparent mailing address on 10600 S. Pennsylvania Avenue, Oklahoma City, and the Copper Trails address. MTI's own exhibits on summary judgment show L&S's registered address was 11817 "Cooper Tralls Lane;" that Ledford's address as registered agent for L&S was at this address; and that the address of MTI's registered agent, Beard, is also the Copper Trails address. In other words, both entities share the same address, whether it is Ledford's home or not.

¶20 Stephens also presented a number of proposed statements of facts which, as a whole, indicated MTI paid Ledford's expenses and took over debts, assets and equipment of L&S to operate. Specifically:

i. MTI made payments on Ledford's personal vehicle. MTI did not dispute this fact, but claimed it was part of Ledford's compensation package with MTI, and that payments had since ceased.

ii. MTI made mortgage payments on Ledford's home. Again, MTI claimed these payments were part of Ledford's compensation package but have since ceased.

iii. MTI assumed the debt for L&S's trailers and agreed to pay the amount in arrears. Ledford's testimony presented in support stated that two trailers were being leased, and that MTI took over the lease.[11] MTI's response simply claimed that the trailers were not owned, but leased, and were thus neither an asset nor a debt.

iv. MTI took over payments for L&S's Kenworth truck and agreed to catch up L&S's late payments. Ledford specifically testified to these facts at the asset hearing regarding L&S's only tractor-trailer, now used by MTI. However, on summary judgment MTI disputes this fact, inexplicably on the basis that MTI was supposedly upside down on its loan and the truck has negative value.[12] This assertion does not negate or dispute the fact that MTI operates by using the one truck, or key asset, of L&S.

v. The only trucks and trailers used by MTI are those formerly owned or leased by MTI. Again, this fact came directly from Ledford's own testimony, MTI's argument that the loan on the truck was upside down and the trailers were leased notwithstanding.

vi. Ledford/L&S gave his computer to MTI. Ledford disputes this fact. Ledford testified the computer was his personal computer, and that L&S did not have computer equipment. He also testified he used it for L&S and gave it to his sister because she might want to use it for her trucking business (MTI).

vii. L&S used to pay Ledford's personal expenses, which are now paid by Beard and MTI. As pointed out by Ledford, the attached testimony reflects simply that Beard pays Ledford's utilities since L&S went out of business.

¶21 Finally, Stephens proposed as undisputed fact that L&S received no payment from MTI in exchange for transferring the business, assets or accounts to MTI. MTI is correct that the evidence presented did not show a formal transfer of assets to MTI, and nothing of record indicates what may have happened to L&S's bank accounts. However, MTI's unsupported assertion that L&S had no assets to transfer is contrary to evidence that it owned a semi tractor-trailer, though encumbered, among other things one might arguably consider an asset or otherwise a thing of value.[13] Ledford also testified he was not owed and never received funds from MTI, from which one could conclude L&S received no payment for any benefit it might have conferred on MTI.

¶22 The foregoing evidence firmly supports the judgment of the trial court. As stated, not every factor of control fits this factual circumstance or applies. L&S does not subscribe to stock in MTI, and there is no evidence of record from which one could conclude that MTI is grossly undercapitalized, that L&S provides financing to MTI, or that L&S pays the salaries of MTI's employees. MTI and L&S have separate corporate structures. However, many factors squarely apply. Ledford was an officer in both L&S and MTI. He was the sole owner and driver for L&S and is now the CEO and driver for MTI. MTI conducts its business with equipment previously used by L&S (its only truck and trailers) and serves L&S's customers from the same address as L&S.[14]

¶23 Most significantly, MTI did not merely purchase an existing business and operate it separately. MTI represented to L&S's own customers that it, in fact, was L&S, but for the change in names. That conclusion is bolstered by the fact that MTI uses L&S's DOT and motor carrier number and, despite claiming it is a separate entity, has not been assigned its own number. The trial court's determination that MTI is the alter ego or mere instrumentality of L&S is supported by the undisputed facts and controlling law and is therefore affirmed.[15]

CONCLUSION

¶24 The undisputed material facts of record establish that MTI is an instrumentality of L&S, or in reality is the same entity with a different name. We therefore affirm the trial court's judgment of August 31, 2021.

¶25 AFFIRMED.

BARNES, V.C.J., and WISEMAN, P.J., concur.

FOOTNOTES

[1] This Court filed its original Opinion on May 20, 2023. MTI filed a Petition for Rehearing on June 19, 2023 . The Court finds the Petition should be, and his hereby, granted. The original Opinion is withdrawn and this Opinion is substituted in its place.

[2] MTI previously attempted to appeal the trial court's order granting summary judgment in Case No. 119,834. The Oklahoma Supreme Court dismissed that appeal as premature. MTI initiated this appeal after Stephens dismissed her claims against Defendant Pamela Beard (Beard).

[3] See e.g. In re Thompson, 585 B.R. 890, 908 (Bankr. W.D. Okla. 2017)("In sum, while Oklahoma courts have stated that veil piercing is available when 'the separate corporate existence is a design or scheme to perpetuate [sic] a fraud,' the case law actually contains little to no guidance on 'how to apply the 'fraud-scheme prong' of the alter ego test.'").

[4] In Thompson, 585 B.R. 890, the court considered a claim to pierce the veil of an entity that had transferred its assets and funds to other entities with the same owner(s). The court found the plaintiff had failed to establish a veil-piercing claim on that basis because the plaintiff had failed to prove the transfer of corporate assets or funds was intended to hinder, delay or defraud creditors of an entity, suggesting a veil-piercing claim could be supported on this basis.

[5] MTI disputed that L&S had actually been dissolved, asserting that the articles of dissolution were never filed and that L&S remained in good standing on June 28, 2020. Whether L&S was actually dissolved is irrelevant. Additionally, Ledford contended in his deposition that it has ceased operating. MTI also admitted in its briefing that L&S was shut down because Ledford quit driving for it.

[6] Ledford testified in 2019 he is not an employee of MTI, that he has never received funds from MTI, and that MTI, i.e., Mike's Transport is not named after him. (Notably, MTI has but one truck and Ledford is its only driver, plus CEO). The record also contains a non-garnishment affidavit in which Ledford claimed he was not an employee of MTI at the time of service in July 2019, as well as MTI's Continuing Garnishee's Answer/Affidavit, executed by CEO Ledford, asserting Ledford was not employed by MTI. In contrast, and as addressed below, MTI argued in briefing that payments of Ledford's personal vehicle and mortgage were part of his "compensation package" with MTI.

[7] Notably, the email address on MTI's letterhead as well as MTI's motor carrier registration is also "landsfuel@yahoo.com."

[8] MTI attached trucking contracts between it and L&S's customers but attached nothing demonstrating the reason why new contracts were executed, even if it were relevant.

[9] Citing 49 U.S.C. § 13902, 31134, 49 C.F.R. 390.19T, 390.200T.

[10] Stephens also proposed that customers of MTI and L&S understand the companies are one and the same and have undergone a name change. One customer indicated that belief in a letter accompanying a response to a subpoena. MTI suggests the letter cannot lead to an inference that all customers think MTI and L&S are the same entity. While this may be correct, that assertion in no way required the trial court to thus infer the two are separate entities.

[11] Specifically, Ledford testified "someone" took over L&S's transport. The following exchange occurred, "Q. Let me guess. Mike's Transport, Inc.? A. Ding, ding, ding. Q. That's a yes? A. Yes, sir."

[12] The evidence MTI offers does not support this contention. It consists of L&S's contract to purchase the truck and an untitled spreadsheet of unknown origin purporting to show monthly payments made or not made upon an unidentified debt, and nothing further.

[13] MTI took over L&S's leases of two trailers and serves customers of L&S, which it apparently solicited by telling L&S's customers it was the same entity with a different name.

[14] As noted, L&S apparently received no payment for MTI's use of its truck or the transfer of leases. That fact alone does not necessarily establish one entity controls the other. For instance, as MTI claims, one might agree to simply take over a delinquent loan on the truck or one's lease of equipment, though nothing of record addresses whether L&S was released from those obligations in exchange for that agreement. However, it is the combination of this factor with the others which demonstrates that MTI is an instrumentality of or the same entity as L&S.

[15] We note MTI's argument that Stephens' action is an attempt to improperly avoid the "homestead law"--specifically, the exemption provided under 31 O.S.2021, §§ 1(5) and (18) to protect from attachment a person's tools, apparatus or books used in a profession (up to $10,000), and 75% of all current earnings or wages for the last 90 days. This provision and whether Ledford may rely upon it has no apparent bearing on whether MTI is an alter ego of L&S and whether the judgment may be collected from MTI, and we do not consider it further.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1991 OK CIV APP 83, 827 P.2d 896, 63 OBJ 1225, 
Estate of Rahill, Matter of
Discussed

 
2001 OK CIV APP 126, 33 P.3d 947, 72 OBJ 3112, 
KING v. MODERN MUSIC CO
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2006 OK 58, 152 P.3d 165, 
GILBERT v. SECURITY FINANCE CORP OF OKLAHOMA, INC.
Discussed at Length

 
1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, 
Carmichael v. Beller
Discussed

 
2018 OK 17, 414 P.3d 824, 
MONTGOMERY v. AIRBUS HELICOPTERS
Discussed

 
1984 OK 43, 683 P.2d 535, 
Ross v. City of Shawnee
Discussed

 
1985 OK 68, 706 P.2d 890, 
Mayhue v. Mayhue
Discussed

Title 31. Homestead and Exemptions

 
Cite
Name
Level

 
31 O.S. 1, 
Property Exempt from Attachment, Execution or Other Forced Sale - Bankruptcy Proceedings
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA